UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JONATHAN MULLANE,<br><br>                              Plaintiff,<br><br>                v.<br><br>MASSACHUSETTS BOARD OF BAR EXAMINERS, MARILYN J. WELLINGTON and DOES 1 through 10, inclusive, in their individual and professional capacities,<br><br>                              Defendants. | CIVIL ACTION<br>NO. 1:20-CV-11382 |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS MASSACHUSETTS BOARD OF BAR EXAMINERS
AND MARILYN J. WELLINGTON'S MOTION TO DISMISS**

Plaintiff, a petitioner for admission to the Massachusetts bar, brings this lawsuit *pro se*, claiming that he should not have to participate in the process for obtaining Massachusetts bar admission set forth in Massachusetts statutes and Massachusetts Supreme Judicial Court ("SJC") rules and decisions.  Instead, he asks this Court to intervene in his in-progress petition for admission to the Massachusetts bar, issue a declaratory judgment against the Massachusetts Board of Bar Examiners ("BBE" or "the Board") and its executive director, Marilyn Wellington, and award damages and injunctive relief against Wellington.  The plaintiff's lawsuit should be dismissed because sovereign immunity and the Eleventh Amendment prohibit the exercise of jurisdiction over the BBE and Wellington in her official capacity.  To the extent plaintiff asks this Court to intervene in his in-process application for the Massachusetts bar, the *Younger* abstention doctrine requires this Court to abstain and dismiss the claim.  Finally, Wellington in her individual capacity has absolute quasi-judicial immunity from this lawsuit.

**The Board of Bar Examiners**

The Justices of the Massachusetts Supreme Judicial Court appoint the five members of the BBE. Mass. G.L. c. 221, § 35. The BBE "may, subject to the approval of the supreme judicial court, make rules with reference to examinations for admission to the bar and the qualifications of applicants therefor . . . ." Mass. G.L. c. 221, § 36; *see also* Supreme Judicial Court Rule 3.01, § 7. When a person petitions for admission to the bar, unless otherwise ordered by the Supreme Judicial Court, the petition is referred to the BBE. Mass. G.L. c. 221, § 37. "If the board reports that the petitioner is of good moral character and sufficient acquirements and qualifications and recommends his admission, he shall be admitted unless the court otherwise determines, and thereafter may practice in all the courts of the commonwealth." Mass. G.L. c. 221, § 37. "While deference is given to the decision of the board, [the SJC] retains ultimate authority to decide a person's fitness to practice law in the Commonwealth." *Matter of Prager*, 422 Mass. 86, 91 (1996).

Pursuant to Mass. G.L. c. 221, § 36 and Supreme Judicial Court Rule 3.01, § 7, Rules of the BBE have been approved and promulgated by the SJC. A copy of these rules is attached for the Court's convenience. Rule V of the BBE rules sets forth character and fitness standards for admission, as well as procedures for evaluating character and fitness. The rules provide that "[w]hen a candidate's record contains information that may cast doubt on his/her good character, he/she will be asked via written notice to appear before a member or members of the Board of Bar Examiners for an informal oral interview. The candidate will be given the opportunity to respond to the information and to demonstrate good character and fitness. Following the interview the BBE will render a decision to either a) recommend the candidate for admission, or b) request additional information/action from the candidate, or c) request that the candidate appear for a formal hearing before the Board of Bar Examiners." BBE Rule V.1.3. Prior to a

formal hearing, the Board "may conduct a detailed investigation into the facts and circumstances bearing on a candidate's character and fitness to practice law."  BBE Rule V.2.3.  At a formal hearing, "the candidate (or his/her counsel) have the right to call witnesses, request the issuance of witness summonses . . . and cross-examine witnesses."  BBE Rule V.2.5.  Following a formal hearing, the Board makes findings of fact and a recommendation for or against admission of the candidate, and files the report with the Supreme Judicial Court.  BBE Rule V.2.7.  Any candidate who is dissatisfied with the Board's recommendation may, within 60 days, request that the Chief Justice of the Supreme Judicial Court order a hearing on the matter.  SJC Rule 3.01, § 5.3; BBE Rule V.2.8.

"Candor with the board is essential."  *Strigler v. Board of Bar Examiners*, 448 Mass. 1027, 1029 (2007) (rescript).  "A candidate's failure or refusal to supply information deemed relevant by the Board of Bar Examiners or otherwise to cooperate with the Board of Bar Examiners may be grounds for denial of a recommendation for admission."  BBE Rule V.1.2.  "It is the obligation of an applicant to assure the members of the board and, ultimately, [the SJC] that he or she possesses the necessary qualifications to practice law in the Commonwealth. Such a showing requires a full and exhaustive disclosure of prior wrongdoing, including all relevant circumstances surrounding the conduct, both militating and mitigating, and official documentation where appropriate."  *Prager*, 422 Mass. at 100.  "An applicant's failure to answer all of the board's questions candidly, both on the application and at any hearing, is a powerful indication that the applicant lacks the good character required for admission to the bar."  *Strigler*, 448 Mass. at 1029.  "Any significant doubts about an applicant's character should be resolved in favor of protecting the public by denying admission to the applicant."  *Matter of an Application for Admission to the Bar*, 444 Mass. 393, 397 (2005).

Supreme Judicial Court Rule 3.01, § 9.1 provides that, "[t]he Board of Bar Examiners, and its members, employees, and agents are immune from all civil liability for conduct and communications occurring in the performance of their official duties relating to the examination, character and fitness qualification, and licensing of persons seeking to be admitted to the practice of law."  SJC Rule 3:01, § 9.2 provides that "[r]ecords, statements of opinion and other information regarding a petitioner for admission to the bar communicated by any entity, including any person, firm, or institution, without malice, to the Board of Bar Examiners, or to its members, employees or agents are privileged, and civil suits predicated thereon may not be instituted."

## Allegations in Complaint

### 1. Factual Allegations

Defendant Marilyn Wellington is the Executive Director of Defendant BBE.  First Amended Complaint, ¶ 2-3.  On May 19, 2019, plaintiff submitted a petition for admission to the Massachusetts bar.  *Id.*, ¶ 7.  On September 3, 2019, a staff attorney for the BBE sent plaintiff an email requesting that plaintiff provide a written explanation of the circumstances of his transfer from Suffolk Law School to the University of Miami.  *Id.*, Ex. 1.  On April 23, 2020, the plaintiff received an email from Wellington notifying him that he passed the February 2020 bar exam, but that the BBE "is not prepared to recommend you for admission at this time.  Your application has been placed in pending status as a result of issues identified relative to your current character and fitness for admission."  *Id.*, Ex. 2.  Also on April 23, 2020, Wellington sent plaintiff a letter that began, "You have passed the February 2020 Massachusetts Written Law Examination.  Based on information contained in your Petition for Admission to the Bar, you are required to come in for an interview before the Board of Bar Examiners.  Your interview will pertain to your

answers in the Petitioner's Statement to the Board of Bar Examiners, and any information that may have been obtained during the course of our background investigation." *Id.*, Ex. 3.

On May 7, 2020, plaintiff appeared before the BBE by video conference, without counsel present. *Id.*, ¶ 18. The BBE asked plaintiff about past and ongoing litigation, including why plaintiff had brought a lawsuit against a sitting United States District Judge. *Id.*, ¶¶ 19-20. On May 14, 2020, Wellington sent plaintiff a letter informing him that the BBE has retained a special counsel to conduct a formal investigation, and that the special counsel would contact plaintiff as part of the investigation. *Id.*, Ex. 6. The letter further informed plaintiff that the BBE would inform him of the next steps upon completion of the investigation, which could include a formal hearing. *Id.* The letter further informed plaintiff that his petition for admission to the bar would remain on pending status until the completion of this process. *Id.*

### 2. **Counts**

Counts I, II and III seek monetary and equitable relief for violations of 42 U.S.C. §§ 1983, 1985(3) and 1986 against Wellington in her individual capacity. First Amended Complaint, ¶¶ 33-67. These counts allege Wellington discriminated and retaliated against plaintiff in violation of plaintiff's fundamental right to file a lawsuit protected by First Amendment; deprived plaintiff of his right to procedural and substantive due process in timely investigations and written notice of reasons for any delay; deprived him of his property interest in his license to practice law; and deprived him of the equal protection of the laws. *Id.*, ¶¶ 38, 50-51, 65. Count IV seeks unspecified prospective declaratory and injunctive relief under the doctrine of *Ex Parte Young* against Wellington in her official capacity,. *Id.*, 68-70. Counts V seeks a declaratory judgment under 28 U.S.C. § 2201(a) that the actions of the BBE and Wellington in her individual and official capacities violated plaintiff's rights under the First, Fifth and Fourteenth Amendments. First Amended Complaint, ¶¶ 71-75. Count VI seeks a

declaratory judgment under 28 U.S.C. § 2201(a) that the actions of the BBE and Wellington in her individual and official capacities violated the supremacy clause of the United States Constitution.  First Amended Complaint, ¶¶ 76-87.

## Argument

Courts in this jurisdiction have dismissed lawsuits brought by plaintiffs against state boards like the BBE, and their members and employees, based on a combination of sovereign immunity, abstention, and quasi-judicial immunity.  *See Sinapi v. Rhode Island Board of Bar Examiners*, 910 F.3d 544, 549-50, 552-55 (1st Cir. 2018) (dismissing claims against official capacity defendants because they have Eleventh Amendment immunity, dismissing claims against individual defendants because they have quasi-judicial immunity, and bypassing the *Rooker-Feldman* issue in light of those substantive rulings); *Coggeshall v. Massachusetts Bd. of Registration of Psychologists*, 604 F.3d 658, 662-66 (1st Cir. 2010) (Eleventh Amendment required dismissal of monetary claims against board and board members in their official capacities, quasi-judicial immunity required dismissal of monetary claims against board members in their individual capacities, and *Younger* abstention required dismissal of nonmonetary claims); *Bettencourt v. Board of Registration In Medicine of Com. of Mass.*, 904 F.2d 772, 776-85 (1st Cir. 1990) (*Younger* abstention prevented claims for equitable relief, sovereign immunity prevented claims for damages against state board, and absolute quasi-judicial immunity prevented claims for damages against board members and staff individually); *Johnson v. Board of Bar Overseers of Mass.*, 324 F.Supp.2d 276, 282-87 (D.Mass. 2004) (*Younger* abstention applied to bar disciplinary proceedings, state entities had Eleventh Amendment immunity from claims for damages, and individual defendants had quasi-judicial and quasi-prosecutorial immunity).  This Court should dismiss the plaintiff's claims for the same reasons.

**I.      The Eleventh Amendment Bars Plaintiff's Suit Against The Board Of Bar Examiners And Defendant Wellington In Her Official Capacity.**

Counts V and VI against the BBE should be dismissed because the BBE has sovereign immunity from suits in federal court, protected by the Eleventh Amendment. Counts IV, V and VI against Wellington in her official capacity should be dismissed for the same reasons, to the extent those counts seek anything other than prospective injunctive relief. The Eleventh Amendment reads in pertinent part: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." The Amendment's "ultimate guarantee" is "that nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). This guarantee applies equally to any agency or department of the State. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). It likewise applies to suits against state officials in their official capacities, which is the legal equivalent of suing that official's office. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Despite its phrasing, the amendment applies to suits in federal court by a state's own citizens as well. *See, e.g.*, *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). The Eleventh Amendment precludes plaintiff's suit against the BBE and Wellington in her official capacity, except to the extent he seeks as-yet unspecified prospective injunctive relief.

The declaratory judgment act does not abrogate state sovereign immunity. The declaratory judgment act was enacted under the authority of the judiciary clause of the constitution, Article 3, Section 2, not section 5 of the Fourteenth Amendment. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239-40 (1937); *Comfort v. Lynn School*, 131 F.Supp.2d 253, 255-56 (D.Mass. 2001). As such, it does not abrogate state sovereign immunity protected by the Eleventh Amendment. *Comfort*, 131 F.Supp.2d at 255-56. Further, the

7

Commonwealth, its agencies, and officials in their official capacities are not "persons" subject to suit under 42 U.S.C. §§ 1983, 1985, or 1986, *Will*, 491 U.S. at 71; *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005); *Sturdza v. United Arab Emirates*, 281 F.3d 1287, 1307 (D.C. Cir. 2002), so those statutes cannot serve as a basis for plaintiff's declaratory judgment claims.

## II. The Court Should Abstain From Interfering In The Process For Massachusetts Bar Admission Established By Massachusetts Statutes, Decisions And Court Rules.

The plaintiff is requesting that this Court interfere in the established process for petitioning for admission to the Massachusetts bar.  The *Younger* abstention doctrine, named after *Younger v. Harris*, 401 U.S. 37 (1971), prevents federal courts from interfering in ongoing state criminal, civil or administrative proceedings where important state interests are involved. *See, e.g.*, *Bettencourt*, 904 F.2d at 777.  The Court should apply *Younger* and abstain from interfering in the plaintiff's pending petition for admission to the Massachusetts bar, and dismiss the case instead.  *See Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 431-37 (1981); *Coggeshall*, 604 F.3d at 664-66; *Bettencourt*, 904 F.2d at 776-81; *Johnson*, 324 F.Supp.2d at 282-85.   All of the counts brought by the plaintiff, Counts I through VI, should be dismissed on this basis to the extent they seek declaratory or injunctive relief.

"The relationship between control over state bar membership and a state's ability to function as a sovereign political body is very close. The bar is a vital component of the state judiciary which, together with the executive and legislative branches, constitutes an essential ingredient of state government." *Piper v. Supreme Court of New Hampshire*, 723 F.2d 98, 102 (1st Cir. 1983).  "In our adversary system, competent and dedicated lawyers are essential in order for a state's judicial system—undoubtedly one of the essential attributes of state sovereignty—to function properly. Thus, the Supreme Court has said that a state's interest in regulating lawyers is 'especially great since lawyers are essential to the primary governmental function of

administering justice ....'" *Id.* (quoting *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975)). "Accordingly, state bar regulations have usually been granted substantial deference by the federal courts." *Id.*

In *Middlesex County Ethics Committee v. Garden State Bar Association*, the Supreme Court held that *Younger* abstention doctrine prevented federal courts from interfering in state bar disciplinary proceedings, similar to the state bar admission proceedings at issue here. 457 U.S. at 431-37. In so holding, the Supreme Court recognized that there is a "strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Id.* at 431. The Supreme Court held that bar disciplinary proceedings were judicial in nature because the filing of a disciplinary complaint is in effect a filing with the state supreme court. *Id.* at 433. The Court also ruled that New Jersey "has an extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses. States traditionally have exercised extensive control over the professional conduct of attorneys." *Id.* at 434. The Court also ruled that the state proceedings provided abundant opportunity to present constitutional challenges. *Id.* at 435-36. The Court concluded that federal courts should abstain from interfering with the ongoing state bar disciplinary proceedings. *Id.* at 437.

There is no basis for reaching a different result with respect to plaintiff's petition for Massachusetts bar admission. As in *Middlesex County Ethics Committee*, a petition for admission to the Massachusetts bar is a petition to a court. Mass. G.L. c. 221, § 37. As such, it is plainly judicial in nature. *See Middlesex*, 457 U.S. at 533. Unless the SJC orders otherwise, the petition is referred to the SJC's appointed board, but the SJC "retains ultimate authority to decide a person's fitness to practice law in the Commonwealth." *Prager*, 422 Mass. at 91. Massachusetts has an "especially great" interest in regulating lawyers, since they are "essential to the primary government function of administering justice." *Piper*, 723 F.2d at 102 (quoting

9

*Goldfarb*, 421 U.S. at 792). Finally, the procedures afforded a petitioner for admission for the bar include review by the SJC, and "[t]here is no question of the SJC's ability to address and resolve . . . federal constitutional challenges[.]" *Bettencourt*, 904 F.2d at 778.

The First Circuit and District of Massachusetts have consistently ruled that *Younger* abstention prevents federal courts from interfering in the proceedings of similar state boards. In *Bettencourt v. Board of Registration in Medicine of Massachusetts*, the First Circuit held that *Younger* abstention prevents federal courts from interfering with proceedings of the Massachusetts board that licenses and disciplines doctors. 904 F.2d at 776-81. The First Circuit ruled that such proceedings were judicial in nature, that Massachusetts had an important state interest in enforcing its standards of medical licensure, and that review proceedings before the SJC provided an adequate opportunity to raise federal constitutional challenges. *Id.* at 778. In *Coggeshall v. Massachusetts Board of Registration of Psychologists*, the First Circuit similarly held that *Younger* abstention prevented federal courts from interfering in proceedings of the state board that regulates psychologists, for similar reasons. 604 F.3d at 664-66. And in *Johnson v. Board of Bar Overseers of Massachusetts*, the District of Massachusetts ruled *Younger* abstention prevented it from interfering in Massachusetts bar disciplinary proceedings. 324 F.Supp.2d at 282-85. Consistent with *Middlesex Ethics Committee*, *Coggeshall*, *Bettencourt*, and *Johnson*, the Court should abstain from interfering in the ongoing state judicial proceedings to determine whether the plaintiff should be admitted as a member of the Massachusetts bar.

### III. Wellington Has Quasi-Judicial Immunity From Suits For Damages.

Wellington cannot be sued for damages in her individual capacity because, as an employee of the BBE assisting in its adjudicative function, she is entitled to quasi-judicial immunity. *See Sinapi*, 910 F.3d at 554-55; *Coggeshall*, 604 F.3d at 662-63; *Bettencourt*, 904

F.2d at 782-85; *Johnson*, 324 F.Supp.2d at 286-87. Counts I, II and III, for damages against Wellington in her individual capacity, should be dismissed on this basis.

In *Sinapi v. Rhode Island Board of Bar Examiners*, the First Circuit extended quasi-judicial immunity to members of the Rhode Island Board of Bar Examiners in a suit challenging the Board's decision to deny a request for accommodation in taking the Rhode Island bar exam. 910 F.3d at 546, 554-55. *Sinapi* explained that the role of the board member is "functionally comparable to that of a judge," weighing facts and ruling on the merits of the requested accommodation. *Id.* at 554. The court also explained that "the act of denying a bar applicant an accommodation is likely to stimulate a litigious reaction by the disappointed applicant . . . . The need for quasi-judicial protection of the Board member is almost painfully obvious[,]" and "simply essential if the Board is to function objectively." *Id.* at 555. The court further explained that the board's process embraced protections, including review by the Rhode Island Supreme Court, that enhanced the reliability and impartiality of the decisionmaking process. *Id.* The Court concluded that board members in their individual capacities were "immune from any claim for monetary damages." *Id.*

*Sinapi* relied on the First Circuit's decision in *Bettencourt v. Board of Registration in Medicine of Massachusetts*. *Sinapi*, 910 F.3d at 554. In *Bettencourt*, the First Circuit extended quasi-judicial immunity to members and employees of the Massachusetts Board of Registration in Medicine. 904 F.2d at 782-85. The First Circuit explained that board members were functionally comparable to judges because they weighed evidence, made factual and legal determinations, chose sanctions, and wrote opinions explaining their decisions. *Id.* at 783. The court recognized that the act of revoking a physician's license "is likely to stimulate a litigious reaction from the disappointed physician, making the need for absolute immunity apparent." *Id.* The court also recognized that sufficient safeguards existed, both before the board and in review

11

by the SJC, to enhance the reliability of information and the impartiality of the decisionmaking process. *Id.* The court also extended quasi-judicial immunity to board staff members because they were part of the adjudicatory process. *Id.* at 784-85.

The First Circuit has also applied the *Bettencourt* standard in extending quasi-judicial immunity to the members of the Massachusetts Board of Registration in Psychology. *Coggeshall*, 604 F.3d at 662-63. Similarly, the District of Massachusetts has applied the *Bettencourt* standard in extending quasi-judicial immunity to members of the Massachusetts Board of Bar Overseers. *Johnson*, 324 F.Supp.2d at 286-87. In *Johnson*, the District Court ruled that deciding whether to recommend an attorney for discipline is a traditional adjudicatory function, that recommending an attorney for discipline is likely to stimulate a litigious reaction, and multiple levels of review, including review by the full SJC, ensured reliable decisionmaking. *Id.* at 287.

This Court should reach the same result here. Wellington is alleged to be participating in the Board's adjudicatory process of determining whether the plaintiff should be admitted to the Massachusetts bar. The need to protect the integrity of that decisionmaking process from fear of litigation is as evident as in *Sinapi*, *Bettencourt*, *Coggeshall*, and *Johnson*. Indeed, SJC rules protect the integrity of that process by providing that, "[t]he Board of Bar Examiners, and its members, employees, and agents are immune from all civil liability for conduct and communications occurring in the performance of their official duties relating to the examination, character and fitness qualification, and licensing of persons seeking to be admitted to the practice of law."  SJC Rule 3.01, § 9.1. Finally, the processes afforded to plaintiff, which include a formal hearing at which "the candidate (or his/her counsel) have the right to call witnesses, request the issuance of witness summonses . . . and cross-examine witnesses[,]" BBE Rule V.2.5, and review by the SJC, SJC Rule 3.01, § 5.3; BBE Rule V.2.8, ensures the reliability and

impartiality of the decisionmaking process.  *See Sinapi*, 910 F.3d at 555; *Bettencourt*, 904 F.2d at 783.  Consistent with *Sinapi*, *Bettencourt*, *Coggeshall*, and *Johnson*, Wellington is entitled to quasi-judicial immunity,[1] and the claims against her should be dismissed.

## Conclusion

For the foregoing reasons, plaintiff's Amended Complaint should be dismissed.

                                                 MASSACHUSETTS BOARD OF BAR EXAMINERS
and MARILYN J. WELLINGTON

By their attorney,

MAURA HEALEY
ATTORNEY GENERAL

/s/ Daniel G. Cromack
Daniel G. Cromack, BBO#652252
Assistant Attorney General
Government Bureau/Trial Division
One Ashburton Place, Room 1813
Boston, MA  02108
617-963-2573
daniel.cromack@mass.gov

October 5, 2020

---

[1] Although Wellington has absolute quasi-judicial immunity, and the Court need not address whether the plaintiff has otherwise stated a constitutional claim, it should be noted that nothing Wellington is alleged to have done comes close to violating any clearly established constitutional right.  Wellington is not alleged to be a member of the Board.  She is alleged to have sent plaintiff one email and two letters, informing plaintiff of the status of his petition, the date and time of his informal interview with the Board, and the Board's decision to retain special counsel to conduct an investigation.  Complaint, Exs. 2, 3, and 6.  She is not alleged to have taken any other action with respect to the plaintiff beyond sending these communications.  None of these letters comes anywhere close to a violation of any constitutional right, let alone one that was clearly established at the time Wellington sent them.

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

      /s/ Daniel G. Cromack
      Daniel G. Cromack
      Assistant Attorney General