## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Docket No. 1:20-CV-11382-DJC

JONATHAN MULLANE,  )
                           )
      *Plaintiff,*     )
v.                     )
                           )
MASSACHUSETTS BOARD  )
OF BAR EXAMINERS,  )
MARILYN J. WELLINGTON,  )
and DOES 1 through 10, inclusive,  )
in their individual and professional  )     **Hearing Requested**
capacities,  )
                           )
      *Defendants.*   )

## PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANTS WELLINGTON AND MASSACHUSETTS BOARD OF BAR EXAMINERS

At Cambridge, Massachusetts,
This 26th Day of October, 2020

JONATHAN MULLANE
Plaintiff *pro se*
30 Donnell Street
Cambridge, MA 02138
Tel.: (617) 800-6925
j.mullane@icloud.com

**TABLE OF CONTENTS**

I.  Plaintiff is entitled to declaratory and injunctive relief; the
equitable relief of a federal court can bar the enforcement
of any unconstitutional state law, rule, or regulation.                    1

  (a)  Article III district courts have unfettered jurisdiction over all
       challenges to state bar admission procedures brought under the
       federal Constitution.                                               1

  (b)  Applicable standards of review for the "as applied" and "facial"
       constitutional challenges of the pertinent procedural rules of the
       Board of Bar Examiners.                                             3

      (i)    "Facially" and "As applied," the procedural rules are
             violative of the Due Process Clause of U.S. Const., Amend.
             XIV, and cannot survive "strict scrutiny" review.            5

      (ii)   "As applied," the Rules of the Board of Bar Examiners are
             violative of the Petition Clause of U.S. Const., Amend. I,
             and cannot survive "strict scrutiny" review.                 9

      (iii)  "As applied," the Rules of the Board of Bar Examiners are
             violative of the Supremacy Clause of U.S. Const., Art. VI,
             Cl. 2 together with the doctrine of implied preemption under
             federal common law.                                          12

      (iv)   Both "facially" and "as applied," the procedural rules of the
             Board of Bar Examiners are constitutionally invalid pursuant to
             the First Amendment Overbreadth Doctrine.                    13

      (v)    Both "facially" and "as applied," the procedural rules of the
             Board of Bar Examiners are void for vagueness.               14

      (vi)   Both "facially" and "as applied," the procedural rules of
             the Board of Bar Examiners are constitutionally void because
             they cannot satisfy the "underinclusiveness" inquiry.        15

      (vii)  Both "facially" and "as applied," the procedural rules
             constitute a bill of attainder, in violation of U.S.
             Const., Art. I § 9 ¶ 3.                                      16

      (viii) "As applied," the procedural rules of the Board of Bar
             Examiners are violative of the First Circuit's

holding in <u>In re Berkan</u>, 648 F.2d 1386 (1st Cir. 1981).                    17

(c)    All of the immunity defenses asserted by Defendants are vitiated and defeated by the <u>Ex Parte Young</u> doctrine.                    18

(d)    Pursuant to the Supreme Court's holding in <u>Sprint Communs., Inc.</u> v. <u>Jacobs</u>, 571 U.S. 69 (2013), <u>Younger</u> abstention is barred and unavailable in this action.                    19

II.    Monetary damages are authorized for all conduct which was *ultra vires*, "administrative," or made in the absence of jurisdiction.                    19


Request for Oral Argument                    21

Conclusion                    21

Certificate of Service                    22

Exhibits

I.    **PLAINTIFF IS ENTITLED TO DECLARATORY AND INJUNCTIVE RELIEF;
THE EQUITABLE RELIEF OF A FEDERAL COURT CAN BAR THE
ENFORCEMENT OF ANY UNCONSTITUTIONAL STATE LAW, RULE, OR
REGULATION.**

   (a)    **Article III district courts have unfettered jurisdiction over all challenges to
state bar admission procedures brought under the federal Constitution.**

In the contexts of petitions for admission to a state bar,[1] it is well settled that actions chal-

lenging the constitutionality of the bar admission *procedure* itself[2] may always be heard in federal

court. See, e.g., Clark v. Va. Bd. of Bar Exam'rs, 880 F. Supp. 430, 446 (E.D. Va. 1995) (entering

an injunction against the Board of Bar Examiners, barring it from posing constitutionally-prohib-

ited questions in its "Character and Fitness Questionnaire"); Keenan v. Bd. of Law Exam'rs, 317

F. Supp. 1350, 1353 (E.D.N.C. 1970) ("[T]he Board contends that federal district courts lack sub-

ject matter jurisdiction 'over matters of admission to State bars or the suspension or disbarment

from State bars' [ . . . ] we hold that federal district courts have jurisdiction under 28 U.S.C. § 1343

to consider claims arising out of the application by state officials of a general bar admission require-

ment that is *alleged* to be unconstitutional"); Dubuc v. Mich. Bd. of Law Exam'rs, 342 F.3d 610

(6th Cir. 2003) (allowing plaintiff bar applicant to proceed in his federal court challenge of an al-

legedly unconstitutional bar admission rule); D.C. Court of Appeals v. Feldman, 460 U.S. 462,

483-85 (1983) (holding that, **while federal district courts cannot reverse a state court's final**

---

[1] "The right to work for a living in one's chosen occupation is for most people a prerequisite to the pursuit of happiness.
If a man may be arbitrarily made to give up his life time endeavor—even for a year— [ . . . ] it is idle to talk to him about
Fourteenth Amendment protection of personal freedom." Keenan v. Bd. of Law Exam'rs, 317 F. Supp. 1350, 1362
(E.D.N.C. 1970).

[2] *i.e.*, as opposed to formal decisions of the Board of Bar Examiners, which are only issued *after* a due process hearing
has been held. As Defendants' motion correctly notes, such is not the case here because Plaintiff's bar petition remains
"ongoing" [ECF 24, p. 1 ¶ 1]. While the petition was filed in May 2019, Defendants have yet to grant Plaintiff any due
process hearing to-date. Thus, the pending petition has been stuck in limbo for the past 18 months while Defendants
continue to "investigate" Plaintiff's litigation activities—*i.e.*, constitutionally protected activities under the Petition
Clause—and for an indeterminate amount of time. Such "investigations," which effectively serve as a *de facto* denial
of an applicant's petition in cases such as this one (where there are no constitutionally-permissible grounds for a formal
denial of the petition), have even lasted as long as seven years. See, e.g., In re Application for Admission to the Bar,
444 Mass. 393 (2005) ("investigation" of the bar applicant lasted seven years). Moreover, Massachusetts bar appli-
cants are routinely denied *timely* judicial review and access to the state courts. See, e.g., Britton v. Bd. of Bar Exam'rs,
471 Mass. 1015 (2015) (where a bar applicant applied for admission in 2006, yet judicial review was not conducted until
nine years later in 2015). Such a bar admission procedure, "as applied," squarely violates the Supreme Court's holding
in Willner v. Comm. on Character & Fitness, 373 U.S. 96 (1963) (state bar admission procedures are constitutionally
required to provide procedural and substantive due process). This includes, without limitation, the constitutional right
to a timely and speedy "due process" hearing.

decision to deny "a *particular* application for admission," they can, however, resolve a "general challenge" to the future enforcement of an allegedly unconstitutional bar admission rule (emphasis supplied)).

Under the procedural rules of the Board of Bar Examiners, Plaintiff has no right to any judicial review at all—let alone a timely one. This is because no "formal hearing" was ever held in this particular instance.  As such, there is no appealable final decision for him to appeal to the SJC. Instead, Defendants have knowingly opted to suspend their decision on Plaintiff's bar petition indefinitely by belatedly initiating an untimely "investigation" into Plaintiff's litigation activities. Under the Board's procedural rules, this investigation may extend for an indefinite period of time. ECF 16, ¶ 21. When Defendants finally decided to initiate an "investigation" in May 2020, by that late point in time, one (1) entire year had already passed since Plaintiff had submitted his application for the bar and had successfully completed his JD degree in May 2019. Id. at ¶¶ 26-27.

In seeking dismissal of this action, Defendants Wellington and Board of Bar Examiners rely primarily on the First Circuit's holding in Sinapi v. R.I. Bd. of Bar Examiners, 910 F.3d 544 (2018). See ECF 24, p. 11 ¶¶ 2-3. This reliance is misplaced. In Sinapi, *supra*, the First Circuit reversed the district court's allowance of monetary damages against the Board of Bar Examiners on quasi-judicial immunity grounds. Id. at 555. However, what Defendants' moving papers curiously omit is the fact that the First Circuit had *also* rejected the Board's separate appeal of the district court's injunction against it. See **EXHIBIT 1** (district court's restraining order against the Board of Bar Examiners); see also Sinapi v. R.I. Board of Bar Examiners, et al., Docket No. 15-01980 (1st Cir. Aug 27, 2015) (declining to hear "moot" appeal of the district court's restraining order). The *second* Sinapi appeal—*i.e.*, the appeal cited by Defendants—does not discuss or even tangentially address the district court's allowance of equitable relief against the Board of Bar Examiners. Indeed, it only addresses the narrow question of monetary damages—and under an entirely unrelated and separate set of facts in an action alleging Americans with Disabilities Act violations.

Dubuc v. Mich. Bd. of Law Exam'rs, 342 F.3d 610 (6th Cir. 2003) is factually analogous to the case at bar, and specifically addresses the ability of plaintiffs to obtain declaratory and injunctive relief (*i.e.*, in contrast with Sinopi, which only discusses monetary damages). In Dubuc, *supra*, the plaintiff brought a § 1983 action in federal court against the Board of Law Examiners after it denied his bar application on purported "character and fitness" grounds. Id. at 612. The plaintiff alleged

2

that his First Amendment rights were violated because the Board denied his bar application due to the fact that he had been involved in approximately 38 lawsuits, and had also filed criminal charges against a Michigan judge. Ibid.

On appeal, the Sixth Circuit reversed the district court's dismissal on immunity grounds, and remanded the case for further proceedings. Ibid. Citing to the well-settled doctrine of Ex Parte Young and the holding of the United States Supreme Court in Verizon Md. Inc. v. PSC, 535 U.S. 635, 645 (2002), the court held that it was error to deny the plaintiff's request for declaratory and injunctive relief against the Board. Id. at 616.

Furthermore, it has been long recognized that a private citizen can bring an action in federal court against state officials under the First, Fifth, or Fourteenth Amendments.[3] See, e.g., Zwickler v. Koota, 389 U.S. 241 (1967) (considering private action for First Amendment violation); Hannah v. Larche, 363 U.S. 420 (1960) (considering private action for Fifth Amendment violation); Hague v. CIO, 307 U.S. 496 (1939) (considering private action for Fourteenth Amendment violation). Private citizens can also assert claims under the Supremacy Clause in federal court. See Swepi, Ltd. P'ship v. Mora Cnty., 81 F. Supp. 3d 1075, 1167 (D.N.M. 2015). The Supremacy Clause creates an *implied* right of action[4] for private citizens against state officers who are threatening to violate federal law. Pharm. Research & Mfrs. of Am. v. Concannon, 249 F.3d 66, 73 (1st Cir. 2001) (citing Burgio & Campofelice, Inc. v. N.Y. State Dep't of Labor, 107 F.3d 1000, 1006 (2d Cir. 1997)).

    **(b)** **Applicable standards of review for the "as applied" and "facial" constitutional challenges of the pertinent procedural rules of the Board of Bar Examiners.**

*Firstly*, constitutional challenges alleging that a state law and/or procedural rule does not comport with due process requirements are subject to "strict scrutiny" review if a "fundamental right" under the Due Process Clause is implicated. Ibid. This particular standard of review applies in cases such as the instant matter, wherein the subject state laws are alleged to implicate both

---

[3] "[C]ivil rights complaints are to be ***broadly construed*** in order to effectuate the high congressional priority placed upon the vindication of civil rights deprivations." Canty v. Brown, 383 F. Supp. 1396, 1399 (E.D. Va. 1974), aff'd, 526 F.2d 587 (4th Cir. 1975), cert. denied, 423 U.S. 1062 (1976).

[4] In the Rule 12 motion to dismiss of Defendants Wellington and Board of Bar Examiners [ECF 23-24], the arguments set forth therein appear to be myopically limited to Plaintiff's *express* right of action under 42 U.S.C. § 1983 for constitutional torts.

"fundamental rights" and liberty interests. See, e.g., <u>Washington</u> v. <u>Glucksberg</u>, 521 U.S. 702, 766-67 (1997). Even assuming *arguendo* that there is no constitutionally-protected interest in the practice of law, all persons do in fact have a "fundamental right" to: (1) timely due process hearings; and (2) timely judicial review of governmental action; and (3) timely access to the state courts. Taking the averments of the operative complaint as true, the challenged state procedural rules contravene all of the foregoing "fundamental rights" under the Due Process Clause of U.S. Const., Amend. XIV.[5] *Secondly*, it is black letter law that the heightened "strict scrutiny" standard applies in the context of "content-based" First Amendment challenges. This action specifically challenges content-based regulations of speech, *i.e.*, the filing of a civil action. Accordingly, this Court is required to apply "strict scrutiny" in reviewing the challenged procedural rules of the Board of Bar Examiners. See, e.g., <u>Reed</u> v. <u>Town of Gilbert</u>, 576 U.S. 155, 163-64 (2015).

 *Thirdly*, a separate standard of review applies to challenges under the Supremacy Clause of U.S. Const., Art. VI, Cl. 2. When Congress has not expressly stated its intent, courts can infer Congress' intent to occupy a given field of regulation if it has legislated comprehensively. Courts can infer "field preemption" if Congress' act relates to a field where the federal interest is so dominant that the federal system can be assumed to preclude enforcement of state laws on the same subject. <u>English</u> v. <u>Gen. Elec. Co.</u>, 496 U.S. 72, 79 (1990). In the context of a Supremacy Clause analysis, courts can also infer "conflict preemption" when there is a conflict between a state law and a federal statute or regulation. Courts can identify such a conflict when a state law "stands as an obstacle to the accomplishment and execution of the [Congress'] full purposes and objectives." <u>Freightliner Corp.</u> v. <u>Myrick</u>, 514 U.S. 280, 287 (1995). When a court determines that there is a conflict, the relative importance of the state's interest is immaterial; state law must always yield to federal interests.

---

[5] Even if this Court were to apply the lower "rational basis" standard vis-à-vis the due process challenge, the outcome of the analysis would be identical. This is because there can be no legitimate state interest in denying bar applicants their right to a timely due process hearing, and timely judicial review thereafter. Defendants have identified no state interest in arbitrarily initiating an "investigation" into Plaintiff's constitutionally-privileged litigation activities—an investigation which they did not initiate until one (1) entire year after Plaintiff filed his bar petition in May 2019. Stated differently, even if Defendants were able to demonstrate that the enforced procedural rules are "rationally related" to a governmental interest (and they cannot), that interest must be a constitutionally "legitimate" one. Even under the more liberal "rational basis" test, Defendants cannot enforce any laws and/or procedural rules which are irrational or arbitrary, nor can they draw distinctions between persons in a manner which serves no constitutionally-legitimate end. <u>Romer</u> v. <u>Evans</u>, 517 U.S. 620, 635 (1996).

**(i)      "Facially" and "as applied," the Rules of the Board of Bar Examiners are violative of the Due Process Clause of U.S. Const., Amend. XIV, and cannot survive "strict scrutiny" review.**

The Board of Bar Examiners' procedural rules, both "facially" and "as applied," fail to comport with basic, fundamental rights the Due Process Clause of U.S. Const., Amend. XIV. If the Board of Bar Examiners opts to indefinitely "investigate" a bar applicant (as it has done here), under its own procedural rules, the unfortunate applicant has no right of appeal at all. The subject procedural rules simply do not provide for *any* judicial review in such situations. It is not until the investigation is finally terminated (*i.e.*, years later, and at the Board's sole discretion), and a formal due process hearing is subsequently held by the Board of Bar Examiners, that an applicant is finally permitted to appeal to a state court.

"The candidate has the burden to convince the Board of Bar Examiners that it should recommend him or her to the Supreme Judicial Court for admission to the bar." BBE Rule V.2. BBE Rule V.2.7 provides that "[f]ollowing the *conclusion* of the formal [due process] hearing, the Board of Bar Examiners shall make its findings of fact and recommendation for or against the admission of the candidate." Ibid. "Any candidate who is dissatisfied with the Board of Bar Examiners' recommendation concerning his or her character and fitness may, within 60 days after the Board of Bar Examiners' recommendation, request that the Chief Justice of the Supreme Judicial Court order a hearing on the matter." BBE Rule V.2.8 (citing to SJC Rule 3:01 § 5.3).

Defendants correctly state that the procedural rules of the Board of Bar Examiners allow them to initiate an "investigation" into any applicant's "character and fitness" [ECF 24, p. 3 ¶ 1], and without notice specifying their reason for electing to do so. Pursuant to BBE Rule V.2.3 ("Investigation"), "[p]rior to a hearing, the Board of Bar Examiners may conduct a detailed investigation of facts and circumstances bearing on a candidate's character and fitness to practice law." Ibid. Not only does the Rule fail to delineate precisely what subjects are considered relevant to an applicant's "character and fitness[,]" it fails to provide any timelines and/or deadlines for the completion of such an investigation. As such, Defendants are free to: (1) "investigate" any applicant for any reason[6] or spurious pretext, as alleged here (*e.g.*, if the applicant was previously a

---

[6] In other words, the Rule gives complete, unconditional deference to the discretion of the Board of Bar Examiners and fails to limit and/or delineate what aspect(s) of an applicant's personal life can or cannot be the subject of an "investigation." While the Rule states that the "investigation" may pertain to any "facts and circumstances bearing

member of the Communist Party, if the applicant has a certain religious or political belief, if the applicant has a certain sexual preference, *etc.*); (2) *de facto* deprive the applicant of his or her law license and income for an indeterminate number of years while the "investigation" is ongoing; and (3) unnecessarily and needlessly initiate such an "investigation" long after the applicant has already graduated from law school. All of the foregoing issues concerning the Board of Bar Examiners' procedural rule render the same unconstitutional—both "facially" and "as applied" in this particular instance.

Applying the procedural rules of the Board of Bar Examiners, persons such as Plaintiff whose Massachusetts bar petitions are left in limbo during such multi-year "investigations" are routinely deprived of their right to access the courts, and are deprived of their right to timely judicial review. See, e.g., Britton v. Bd. of Bar Exam'rs, 471 Mass. 1015 (2015) (where a bar applicant applied for admission in 2006, yet judicial review was not conducted until nine years later in 2015). In addition to the foregoing, persons such as Plaintiff are routinely deprived of their right to a timely formal "due process" hearing. See, e.g., In re Application for Admission to the Bar, 444 Mass. 393 (2005) ("investigation" of the bar applicant lasted **seven years** before the Board of Bar Examiners ultimately issued a formal denial). Such a bar admission procedure, "as applied," squarely violates the Supreme Court's holding in Willner v. Comm. on Character & Fitness, 373 U.S. 96 (1963) (state bar admission procedures are constitutionally required to provide procedural and substantive due process). This includes, without limitation, the constitutional right to a timely and speedy "due process" hearing—something which has yet to even occur in this particular instance.

Moreover, as previously stated, *ante*, BBE Rule V.2.3 ("Investigation") conspicuously fails to provide any deadlines or timelines vis-à-vis the total duration of any "investigation." As a result, such "investigations" can arbitrarily last as long as an entire decade in Massachusetts. Even more concerning is the fact that the said Rule inexplicably fails to establish the latest point in time that an "investigation" can be initiated by the Board of Bar Examiners. As a result, BBE Rule V.2.3 effectively allows Defendants to finally *begin* investigating applicants such as the undersigned as

---

on a candidate's character and fitness to practice law[,]" it fails to set forth precisely which factors are deemed to adversely impact the applicant's ability to become a successful lawyer. Even assuming *arguendo* that an applicant's litigation activities are somehow relevant to his "character or fitness to practice law" (and they are not), it is forsooth doubtful that a candidate's prior courtroom experiences would negatively impact his or her ability to become a successful, practicing attorney.

late as one (1) entire year after their graduation from law school. This unnecessarily results in causing recent law school graduates to be unemployed, and is likely the reason why other states (*e.g.*, Florida) conduct their "fitness and character" investigations while the applicant is still a law student. Not only is the Florida approach both fair and equitable, unlike the Massachusetts approach, it avoids arbitrarily and unnecessarily causing recent graduates to be unemployed while the investigation remains ongoing.[7]

By way of further example, while the Massachusetts procedural rules only provide for appeals of adverse "final decisions" after a formal hearing, other states such as New York provide for a *second* type of petition to the state judiciary in the event of an unreasonable delay. See 22 NY CRR § 601.1(n) ("**Petition to Appellate Division in case of unreasonable delay**"). Inexplicably, no such provision exists under the Massachusetts procedural rules. As such, in this Commonwealth, the Board of Bar Examiners can indefinitely refuse to issue a formal decision on any given bar application, and the applicant has no legal recourse whatsoever. This is unfortunately what has occurred in the instant matter. For this reason, Defendants are indeed correct in stating that Plaintiff's Massachusetts bar petition currently remains "in progress" and ongoing. ECF 24, p. 1 ¶ 1.

Similarly, Rule 3-40 ("Petition for Court Review") of the Florida Rules of the Supreme Court Relating to Admissions to the Bar establishes two (2) separate types of judicial review, in lockstep with the New York procedural rules. While dissatisfied applicants can obviously appeal adverse final decisions of the Florida Board of Bar Examiners, they are additionally provided with a *second* type of judicial review under Rule 3-40.2 ("Dissatisfied with Length of Board's Investigation"):

> **3-40.2 <u>Dissatisfied with Length of Board's Investigation.</u>** Any applicant or registrant whose character and fitness investigation is not finished within 9 months from the date of submission of a completed Bar Application or Registrant Bar Application may petition the Supreme Court of Florida for an order directing the board to conclude its investigation [ . . . . ] The board will have 30 days after the service of the petition to serve a response.

---

[7] In the case at bar, even assuming *arguendo* that Defendants have a *bona fide* and constitutionally-permissible reason to "investigate" Plaintiff (and they do not), there is no "legitimate state interest" in arbitrarily *starting* the investigation over one (1) year after graduation. Not only is such action arbitrary, it is respectfully submitted that the only reasonable inference that can be drawn therefrom in the instant matter is that such punitive action is not being undertaken in good faith.

<u>Ibid.</u> Inexplicably, the procedural rules of the Massachusetts Board of Bar Examiners conspicuously fail to provide any analogous provision—thereby preventing applicants such as Plaintiff from obtaining *any* timely judicial review in the state courts.

To survive the exacting standard of "strict scrutiny" review, Defendants—*i.e.*, not Plaintiff—must prove that the challenged law is "narrowly tailored[8] to further a compelling government interest." <u>Rosenberg</u> v. <u>LoanDepot.com LLC</u>, 435 F. Supp. 3d 308, 319-20 (D. Mass. 2020) (citing <u>Reed</u> v. <u>Town of Gilbert, Ariz.</u>, 576 U.S. 155 (2015)). In addition, the defendant must demonstrate that the challenged provision is "the least restrictive means" of achieving that compelling state interest. <u>McLaughlin</u> v. <u>City of Lowell</u>, 140 F. Supp. 3d 177, 187 (D. Mass. 2015) (citing <u>McCullen</u> v. <u>Coakley</u>, 573 U.S. 464 (2014)). Once the plaintiff makes a *prima facie* showing under a "strict scrutiny" analysis by proposing an alternative to the challenged law (*i.e.*, as it is currently applied), "the burden [then] shifts to the defendant to show that the [plaintiff's] proposed alternative would be less effective or more restrictive." <u>Buffin</u> v. <u>City & Cnty. of S.F.</u>, 2019 U.S. Dist. LEXIS 34253, at *55 (N.D. Cal. Mar. 4, 2019).

In the case at bar, there are numerous alternatives to the procedural rules enforced by the Board of Bar Examiners. Should Defendants deem an "investigation" of a bar applicant to be warranted, they could simply initiate same while the applicant is still in law school—something which is routinely done in Florida and in other states. In the event an "investigation" is initiated, the procedural rules of the Board of Bar Examiners must include a provision such as Florida's Rule 3-40.2 ("Dissatisfied with Length of Board's Investigation"). This is necessary in order to ensure the due process right of access to the courts and the right to a timely judicial review. Reasonable limits must be placed on the time, manner, and place of any "investigation." Investigations must have a legitimate purpose.[9] They cannot be employed as an indiscreet means of discrimination, retaliation, and/or punishment, and they cannot serve as a spurious pretext for unreasonable delays

---

[8] Not only is it required to be "narrowly tailored[,]" the challenged regulation must also be *necessary* in order to promote a compelling governmental interest. <u>See</u> <u>Washington</u> v. <u>Glucksberg</u>, 521 U.S. 702, 720-21 (1997); <u>see</u> <u>also</u> <u>Reno</u> v. <u>Flores</u>, 507 U.S. 292, 301-02 (1993).

[9] As a matter of law, the bar applicant must be provided written notice of the reason, nature, and scope of the initiated investigation—none of which was done here. This will help ensure that "investigations" are not being used as tools to carry out discrimination and retaliation against those who have expressed speech that Defendants may not like or agree with.

and a *de facto* denial of a bar petition. This is particularly true here, where no constitutionally-per-missible grounds exist to justify such drastic action—*i.e.*, action that will foreseeably jeopardize the applicant's professional career permanently. Amendment of the procedural rules of the Board of Bar Examiners could easily prevent abuses such as those seen here.[10]

> **(ii)    "As applied," the Rules of the Board of Bar Examiners are violative of the Petition Clause of U.S. Const., Amend. I, and cannot survive "strict scrutiny" review.**

As the Supreme Court of the United States held in <u>Bill Johnson's Restaurants, Inc.</u> v. <u>N.L.R.B.</u>, 461 U.S. 731, 741 (1983), the First Amendment "guarantees the fundamental right to file a lawsuit." <u>Ibid.</u> The Court has consistently held that these First Amendment protections spe-cifically apply in the context of bar petitions. <u>See, e.g.</u>, <u>Baird</u> v. <u>State Bar of Ariz.</u>, 401 U.S. 1 (1971). By authorizing punishment of bar applicants for having lawfully exercised their First Amendment right to file a lawsuit, by "investigating" applicants' litigation activities, and by viewing applicants' litigation as legitimate (or even relevant) criteria for evaluating their "character and fitness" for the practice of law,[11] the challenged procedural rules of the Board of Bar Examiners "as applied": (1) constitute a "content-based" regulation of free speech and protected First Amendment peti-tioning activities (*i.e.*, the filing of a lawsuit); (2) constitute a "prior restraint" on free speech and the right to petition the judiciary for redress; (3) have a "chilling effect" on protected First Amend-ment activities under the Petition Clause; and (4) permit and authorize retaliation against bar applicants for having lawfully and correctly engaged in constitutionally-protected petitioning ac-tivities. Indeed, Defendants' motion to dismiss tellingly fails to deny and/or refute any of the above-referenced allegations of the operative complaint.

---

[10] <u>See</u> <u>Lawrence</u> v. <u>Pelton</u>, 413 F. Supp. 3d 701 (W.D. Mich. 2019) (*pro se* plaintiff's federal court § 1983 action stated a claim for a substantive due process violation; complaint alleged that state's rule limiting a passing bar examination score's validity to three years was "arbitrary"); <u>Keenan</u> v. <u>Bd. of Law Exam'rs</u>, 317 F. Supp. 1350 (E.D.N.C. 1970) (rule requiring bar applicants to have resided in the state for at least one year prior to sitting the bar examination was unconstitutional).

[11] <u>But cf.</u> Policies and Procedures of the Board of Bar Examiners and the Moral Character and Fitness Committee, State of Nevada, Rule 23 ("The investigation conducted by the C & F Committee is to be thorough in every aspect and concluded as expeditiously as possible. Information may be developed in the course of the investigation that is not germane to the question of licensure, which will be disregarded. **Conduct that is merely controversial** or a disability that is not relevant to character and fitness for law practice **shall *not* be considered**." (emphasis supplied)).

A review of the pertinent Massachusetts jurisprudence reveals that Defendants routinely consider petitioning activities, *viz.* the filing of lawsuits, as grounds for denying petitions for admission to the bar. **Compare** In re Pansé, 473 Mass. 1001 (2015) (denying bar admission due to the applicant's "litigious behavior"); Britton v. Bd. of Bar Exam'rs, 471 Mass. 1015 (2015) (denying bar admission because the applicant filed numerous lawsuits *pro se*[12]); In re Application for Admission to the Bar, 444 Mass. 393, 484 (2005) ("Because the petitioner had initiated several lawsuits in the past, the board was concerned with litigiousness"); **with** Dubuc v. Mich. Bd. of Law Exam'rs, 342 F.3d 610 (6th Cir. 2003) (reversing dismissal of a bar applicant's federal court § 1983 action, wherein he alleged that the Board of Law Examiners violated his First Amendment rights by denying his bar petition due to the fact that he had pressed criminal charges against a judge); Dean v. Byerley, 354 F.3d 540 (6th Cir. 2004) (summary judgment in favor of defendant official was reversed in bar applicant's federal court § 1983 action, alleging that that his First Amendment rights were violated when his bar petition was denied after picketing near the official's home); Lawrence v. Parker, 2019 U.S. Dist. LEXIS 167480 (W.D. Mich. Sep. 16, 2019) (denying motion to dismiss in a federal court § 1983 action alleging that state Board of Law Examiners' denial of plaintiff's bar petition constituted a First Amendment violation and "chilled" free speech; defendants denied bar petition after plaintiff had publicly criticized two members of the Board).

When considering a First Amendment challenge, courts distinguish between content-based and content-neutral regulations of speech. A content-based restriction is one that "applies to particular speech because of the topic discussed or the idea or message expressed." Reed v. Town of Gilbert, Ariz., 576 U.S. 155, 171 (2015). Content-based restrictions "are presumptively unconstitutional and subject to strict scrutiny." Id. at 163; see also One, Inc. v. Olesen, 355 U.S. 371 (1958) (plaintiff was entitled to injunctive relief against defendant postmaster, where defendant refused to deliver homosexual literature through the mail on the grounds that it was "obscene, lewd, lascivious and filthy"). That is, they "may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." Reed, *supra* at 163. Indeed, it is the "rare

---

[12] While this subject is not discussed herein, it is respectfully submitted that the Board's disparate treatment of "*pro se*" lawsuits is also cause for concern under well-settled First Amendment jurisprudence on the issue. What is more, in Defendants' motion to dismiss, Defendants highlight that Plaintiff has brought this action "*pro se*[.]" ECF 24, p. 1 ¶ 1. How Plaintiff's legal representation relates to the merits, *vel non*, of the claims asserted in this action is unclear.

case" in which "strict scrutiny" is overcome by the defendant. <u>Williams-Yulee</u> v. <u>Florida Bar</u>, 573 U.S. 433, 444 (2015).

"As applied," the procedural rules of the Board of Bar Examiners impermissibly allow Defendants to consider an applicant's litigation activities in deciding whether the applicant has the requisite "character and fitness for the practice of law." However, this is constitutionally impermissible for the simple reason that it allows the government to treat certain persons differently based on the content of their speech and constitutionally-protected First Amendment activities. See, e.g., <u>NAACP</u> v. <u>Button</u>, 371 U.S.415 (1963) (Virginia statute barring lawyers' solicitation of clients could not constitutionally be applied on the ground that "only a *compelling* state interest [ . . . ] can justify limiting First Amendment freedoms" (emphasis supplied)); <u>Fla. Star</u> v. <u>B.J.F.</u>, 491 U.S. 524, 538 (1989) (striking down governmental action in part because less speech-restrictive alternatives were available).

Defendants may contend that the procedural rules, "as applied," only place an indirect *burden* on applicants' First Amendment petitioning activities (*i.e.*, as opposed to a direct, outright *prohibition* on the filing of lawsuits). However, the Supreme Court of the United States has uniformly rejected such arguments in the past. See, e.g., <u>McIntyre</u> v. <u>Ohio Elections Comm'n</u>, 514 U.S. 334 (1995) (it was unconstitutional for a statute to punish persons indirectly by indiscriminately outlawing an entire category of speech, and based solely on content); <u>United States</u> v. <u>Playboy Entertainment Group, Inc.</u>, 529 U.S. 803, 812 (2000) ("**The Government's content-based *burdens* must satisfy the same rigorous scrutiny as its content-based *bans***" (emphasis supplied)). In the instant matter, Defendants' "investigations" of persons such as Plaintiff for having filed a lawsuit are plainly "content-based burdens" as opposed to "content-based bans."

A modification of the procedural rules of the Board of Bar Examiners could easily define and narrow the scope of "investigations" to ensure that they are only being used for constitutionally-permissible purposes. An amendment of same could easily ensure that: (1) such "investigations" are not being utilized by the government as a means of discouraging and/or punishing petitioning activities of bar applicants; and (2) that the scope of "investigations" is limited to constitutionally-permissible topics of inquiry, and to subjects which are truly relevant and related to the applicants' "fitness and character;" and (3) to clarify that petitioning activities,

together with all other irrelevant subject matter, are not to be considered as part of the Board's "character and fitness" determinations.

### (iii)   "As applied," the Rules of the Board of Bar Examiners are violative of the Supremacy Clause of U.S. Const., Art. VI, Cl. 2 together with the doctrine of implied preemption under federal common law.

As this Court elucidated in Algonquin Gas Transmission, LLC v. Weymouth Cons. Comm'n, 1:17-CV-10788, ECF 38 at p. 10 ¶ 3 (Dec. 29, 2017) (Casper, J.), implied preemption has two subsets: conflict preemption and field preemption. Ibid. A state law is preempted under conflict preemption when it either makes "compliance with both federal and state regulations [] a physical impossibility," Arizona v. United States, 567 U.S. 387, 399 (2012) (quoting Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142–43 (1963)), or "stand[s] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," id. (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)). A state law is preempted under field preemption when Congress has "occupied the field" by creating "a framework of regulation 'so pervasive [ . . . ] that Congress left no room for the States to supplement it" or "where there is a 'federal interest [ . . . ] so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" Ibid. (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)).

Here, there is not one, but three (3) separate and distinct violations of the Supremacy Clause. *First*, "as applied," the subject state procedural rules effectively permit Defendants to interfere in the ongoing federal court proceedings referenced in the operative complaint. This includes, without limitation, Defendants' efforts to conduct *ex parte* interviews of numerous individuals who are involved in those ongoing federal proceedings. *Second*, by interfering in the administration of the ongoing proceedings in Article III federal courts, this creates an unacceptable risk of conflicting judgments between the Board of Bar Examiners and the federal courts which are hearing those two (2) ongoing matters. *Inter alia*, any formal decision of the Board must include findings of fact and law (*e.g.*, the Board's determination of whether the claims asserted by Plaintiff in the ongoing federal proceedings were frivolous and/or asserted in "bad faith," *etc.*). However, because the federal proceedings remain ongoing, the Supremacy Clause bars such "state action"

as a matter of law—even if the risk of conflicting decisions is only a possibility, and has yet to actually occur.[13]

*Third*, both "facially" and "as applied," SJC Rule 3.01 § 9.1 squarely violates the Supremacy Clause. The said Rule provides that "[t]he Board of Bar Examiners, and its members, employees, and agents are immune from all civil liability for conduct and communications occurring in the performance of their official duties relating to the examination, character and fitness qualification, and licensing of persons seeking to be admitted to the practice of law." Ibid. Even assuming *arguendo* that the SJC can lawfully immunize the Board and its employees from civil liability in actions brought under *state* law, it cannot, however, immunize state employees from liability under *federal* law—only Congress has the authority to exempt individuals from liability under 42 U.S.C. § 1983 and other federal statutes. Stated differently, in crafting § 1983, Congress did not grant a private right of action for constitutional torts committed by state officials "unless the defendant state official is employed by the Massachusetts Board of Bar Examiners." Because federal civil rights legislation "occupies the field" and regulates this area of the law, pursuant to the Supremacy Clause and the doctrine of implied preemption, the SJC is constitutionally barred from carving out exceptions to the enforcement of federal statutes such as 42 U.S.C. § 1983.

   **(iv)   Both "facially" and "as applied," the procedural rules of the Board of Bar Examiners are constitutionally invalid pursuant to the First Amendment Overbreadth Doctrine under federal common law.**

In a First Amendment context, "[t]he overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." Ashcroft v. Free Speech Coalition, 535 U.S. 234, 255 (2002); see NAACP v. Alabama ex rel. Flowers, 377 U.S. 288, 307-08 (1964) (remarking that "a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly").

---

[13] As a matter of settled law, state courts and agencies such as the Massachusetts Board of Bar Examiners are barred from issuing any and all judicial and/or administrative determinations that may potentially contradict the decisions of Article III federal courts pursuant to the Supremacy Clause—nor may they issue decisions which may potentially interfere with the same. See, e.g., Ableman v. Booth, 62 U.S. 506 (1859); Second Employers' Liability Cases, 223 U.S. 1, 58 (1912); Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n; 443 U.S. 658, 695 (1979). Where Congress has specifically intended to act in an area, this automatically triggers the enforcement of the Supremacy Clause and completely nullifies the state action. California v. ARC America Corp., 490 U.S. 93 (1989).

The Supreme Court of the United States has held that the risk of "[e]rror in marking [the] line" between protected and unprotected speech "exacts an extraordinary cost" because "[i]t is through speech that our convictions and beliefs are influenced, expressed, and tested." <u>United States</u> v. <u>Playboy Entm't Group, Inc.</u>, 529 U.S. 803, 817 (2000); <u>see</u> Fallon, R. H., "THE SUPREME COURT, 1996 TERM-FOREWORD: IMPLEMENTING THE CONSTITUTION," 111 Harv. L. Rev. 54, 96 (1997) ("[W]hen the government regulates speech on the basis of content, there is reason to suspect that it has acted for the forbidden purpose of shielding citizens from ideas that the government finds objectionable"); <u>see</u> <u>also</u> <u>R.A.V.</u> v. <u>City of St. Paul</u>, 505 U.S. 377, 386 (1992) (holding that the "strict scrutiny" standard is **necessary to ensure that the government does not "regulate [ . . . ] based on hostility—or favoritism—towards the underlying message [that a speaker] expressed"**).

Here, while the government may have a legitimate interest in regulating the practice of law and the "character and fitness" of Massachusetts attorneys, the Overbreadth Doctrine prohibits the promulgation of rules or policies which "sweep unnecessarily broadly[.]" In other words, even assuming *arguendo* that a bar applicant's petitioning activities are relevant to his or her "character and fitness" for the practice of law, *quod non*, that certainly cannot justify initiating a multi-year "investigation" into the applicant's constitutionally-protected litigation. As a matter of law, such a practice is violative of the Overbreadth Doctrine and is not "narrowly tailored" to the accomplishment of a "legitimate governmental interest." Furthermore, such a sweeping rule foreseeably results in a "chilling effect" on First Amendment petitioning activities. By way of example, if a victim of sexual harassment or other serious misconduct by a member of the judiciary happens to be a law student at the time, she will undoubtably think twice before filing a complaint (or seeking *any* form of redress, for that matter). Citing to this case, any Massachusetts law school professor or dean would simply advise the student to keep silent—unless she wants to incur the punishment of being "investigated" indefinitely and remain unemployed after law school without a law license.

      (v)    **Both "facially" and "as applied," the procedural rules of the Board of Bar Examiners are void for vagueness.**

The "void for vagueness" doctrine applies to any law that potentially limits constitutional rights, as well as to laws that govern rights and obligations vis-à-vis the government. <u>See, e.g.</u>, <u>City of Akron</u> v. <u>Akron Center for Reproductive Health</u>, 462 U.S. 416 (1983) (the word "humane" in a

state statute was unconstitutionally vague); <u>United States</u> v. <u>Loy</u>, 237 F.3d 251 (3rd Cir. 2001) (supervised release condition prohibiting defendant from possessing "all forms of pornography" was unconstitutionally vague, as it posed a real danger that it might ultimately result in a prohibition on whatever the officer personally found titillating); <u>FCC</u> v. <u>Fox Television Stations, Inc.</u>, 567 U.S. 239 (2012) (because the words "obscene" and "indecent" were not clearly defined by the FCC, Court held that they the FCC's restrictions were void for vagueness).

> **(vi)   Both "facially" and "as applied," the procedural rules of the Board of Bar Examiners are constitutionally void because they cannot satisfy the "underinclusiveness" inquiry.**

A statute cannot survive "strict scrutiny" if it fails to effectively regulate activities that pose substantially the same threats to the government's purportedly compelling interest as the conduct that the government prohibits. Underinclusive regulations "diminish the credibility of the government's rationale" for infringing on constitutional rights and generate suspicion that the selective targeting betrays an impermissible motive. <u>City of Ladue</u> v. <u>Gilleo</u>, 512 U.S. 43, 52 (1994). Even absent concern about governmental motives, the demand that restrictions on constitutional rights not be underinclusive reflects an insistence that the government not infringe on rights when doing so will predictably fail to achieve purportedly-justified goals. <u>See</u> <u>id.</u>

Here, while the government may have a legitimate interest in the "character and fitness" of licensed attorneys, by selectively "investigating" only the litigation activities of those *applying* to become a member of the bar—but not the same conduct undertaken by bar members themselves—such a contradiction clearly "diminish[es] the credibility of the government's rationale" for such investigations. Stated differently, the government's purported interest in promoting "character and fitness" by investigating the litigiousness of a bar applicant is belied by the fact that, once a person becomes a licensed attorney, he or she can file an unlimited number of lawsuits— and without fear of any retaliatory "investigation," disbarment, or bar discipline. <u>See, e.g.</u>, <u>Marilyn J. Wellington</u> v. <u>Massachusetts Bar Association</u>, MCAD Docket No. 08BEM03674 (Jul. 18, 2011).[14]

---

[14] Defendant Wellington's personal litigation is *not* cited to embarrass, criticize, or condemn Defendant Wellington in any way. On the contrary, Plaintiff fully supports and applauds Defendant Wellington's decision to exercise her First Amendment petitioning right, and one cannot help but to be impressed by her courage in fighting for a retaliation-free work environment. Standing up for oneself in a public forum in order to speak the truth, and to condemn the unlawful

Thus, the procedural rules which provide for screening and "investigating" bar applicants for their petitioning activities cannot satisfy the "underinclusiveness" inquiry. To use a counter-factual example, if a Massachusetts attorney's excessive personal litigation were indeed grounds for bar discipline and/or disbarment, it would obviously make sense to screen bar applicants for their litigation activities. But such is not the case; in reality, no state bar rule prevents, discourages, or punishes licensed attorneys for filing lawsuits on their own behalf. Wherefore, the government's "double standard" is inherently contradictory. Of course, it makes little sense for the government to punish and exclude bar applicants for any litigation initiated *prior* to becoming a licensed attorney when, at the same time, the government does not punish licensed attorneys for initiating litigation *after* they receive their license to practice law.[15] See Barr v. Am. Ass'n of Political Consultants, 140 S. Ct. 2335, 2357 (Jul. 6, 2020) (in a federal statute prohibiting automated "robo" telephone calls, an exemption for automated calls relating to government debt collection was deemed "underinclusive" because: (1) it authorized many of the automated calls that the statute was designed to prohibit; and (2) the impact of the exemption deviates from the underlying purpose of the statute itself).

    **(vii)**    **"As applied," the procedural rules of the Board of Bar Examiners constitute a bill of attainder, in violation of U.S. Const., Art. I § 9 ¶ 3.**

Because the procedural rules of the Board of Bar Examiners, "as applied," place a significant retaliatory burden upon bar applicants who have lawfully exercised their First Amendment right to petition the judiciary for redress, they are also violative of the Attainder Clause, *viz.* U.S. Const., Art. I § 9 ¶ 3. See, e.g., Ex Parte Garland, 71 U.S. 333 (1866) (striking down a federal law requiring attorneys practicing in federal court to swear that they had not supported the rebellion); Cummings v. Missouri, 71 U.S. 277 (1867) (law requiring anyone seeking a professional license

---

conduct of those who are more powerful than ourselves, is a daunting task. In today's world, doing what is right is often far more arduous than simply doing what is popular.  It is *not*, however, something which any person should ever feel ashamed of. Just as licensed Massachusetts attorneys such as Defendant Wellington must be permitted to file lawsuits against powerful individuals, organizations, or the government without fear of "investigations" or bar discipline, so too must applicants to the Massachusetts bar.

[15] In the case of Defendant Wellington, not only was her status as a licensed Massachusetts attorney in no way affected or jeopardized by her decision to bring an action against the Massachusetts Bar Association, in fact, it would appear that she was subsequently rewarded through an appointment within the state government, *viz.* her current role as Executive Director of the Board of Bar Examiners.

from the state to swear that they had not supported the rebellion was unconstitutional, as it constituted a penalty without a judicial trial); United States v. Lovett, 328 U.S. 303 (1946) (federal statute that barred particular individuals from government employment was held to be punishment prohibited by the Attainder Clause).

The Supreme Court has held that exclusion from a type of employment can indeed constitute prohibited "legislative punishment" within the meaning of the Attainder Clause. Selective Service System v. MPIRG, 468 U.S. 841, 852 (1984) (noting that legislative punishment "has expanded to include legislative bars to participation by individuals or groups in specific employments or professions"); Cummings, *supra* at 321-22 ("[A]ll men have certain inalienable rights—that among these are life, liberty, and the pursuit of happiness; and [ . . . ] in the pursuit of happiness all avocations, all honors, all positions, are alike open to every one [*sic*]"); Ex Parte Garland, *supra* at 377 ("[E]xclusion from any of the professions or any of the ordinary avocations of life for past conduct can be regarded in no other light than as punishment for such conduct."). "[P]ermanent proscription" from a given type of employment by the government is an extreme punishment "of a most severe type[,]" and has historically only been invoked for "odious and dangerous crimes." United States v. Lovett, 328 U.S. 303, 316 (1946). In the instant matter, Defendants are *not* preventing Plaintiff from engaging in the practice of law due to any alleged "odious and dangerous crimes." Instead, Defendants are engaging in retaliation by depriving him of a law license solely due to his First Amendment petitioning activities. Unfortunately, this is something which they have consistently done to bar applicants who correctly and lawfully complained of misconduct committed by government officials. Because Defendants' conduct will foreseeably continue unabated, declaratory and injunctive relief are warranted as a matter of law.

**(viii)   "As applied," the Board's procedural rules violate In re Berkan, 648 F.2d 1386 (1st Cir. 1981).**

In In re Berkan, 648 F.2d 1386 (1st Cir. 1981), the petitioner attorney petitioned for admission to the bar of the United States District Court for the District of Puerto Rico. Id. at 1387. Although the petitioner met all formal requirements for the bar, her application was denied because she had participated in a political demonstration on a U.S. military reservation in Puerto Rico. Id. 1388. On appeal, the First Circuit cited to Goldsmith v. United States Board of Tax Appeals, 270 U.S. 117, 123 (1926) in ruling that, because the petitioner had "satisfied the threshold requirements

for admission to the bar[,]" she "should not have been rejected upon charges of (her) unfitness without giving (her) an opportunity by notice for hearing and answer." Ibid. (internal quotations omitted). The court noted that "a district court in this Circuit [should] do more than play at cat and mouse with a rejected but seemingly qualified bar applicant[.]" Id. 1390. The First Circuit also held that, in addition to a notice for hearing and answer, the petitioner bar applicant was *also* entitled to "**notice of the grounds for [the bar] action" stating "specified reasons**[.]" (Emphasis supplied) ibid.

Defendants' actions in the case at bar squarely flout the First Circuit's holding in In re Berkan. Here, in spite of Plaintiff's repeated requests, Defendants have unlawfully (and tellingly) refused to provide Plaintiff with written notice setting forth the grounds and "specified reasons" for their actions. Defendants' vague and ambiguous allusions to certain unspecified "character and fitness concerns" notwithstanding, even to-date, Defendants have: (1) failed to provide any "specified reasons" for their refusal to recommend Plaintiff for admission to the Massachusetts bar; and (2) failed to provide "specified reasons" for their purported need to hire attorneys from Miami-based Holland & Knight LLP to conduct a multi-year investigation into Plaintiff's constitutionally-protected petitioning activities. Similar to the facts of In re Berkan, in the case at bar, Defendants have not offered Plaintiff a timely formal hearing, and the procedural rules of the Board of Bar Examiners unfortunately do not provide for any judicial review prior to a formal hearing.

(c)     **All of the immunity defenses asserted by Defendants are vitiated and defeated by the Ex Parte Young doctrine.**

Defendants' contention that this Court is required to dismiss Plaintiff's claims for declaratory and injunctive relief is unsupported. While Defendants' moving papers [ECF 23-24] cite certain cases wherein government defendants were entitled to either Eleventh Amendment immunity or quasi-judicial immunity vis-à-vis monetary damages, none of those cases address the question of equitable relief. Courts have consistently held that neither Eleventh Amendment immunity nor quasi-judicial immunity can bar declaratory or injunctive relief. See, e.g., Godoy v. Office of Bar Admissions, 2006 U.S. Dist. LEXIS 110312 (N.D. Ga. Mar. 23, 2006) (Eleventh Amendment immunity could not bar foreign national plaintiff's *pro se* § 1983 action for declaratory and injunctive relief, alleging that defendant Board to Determine Fitness of Bar Applicants violated his constitutional rights by "investigating" him to determine his compliance with U.S.

18

immigration and naturalization laws); <u>Dubuc</u> v. <u>Mich. Bd. of Law Exam'rs</u>, 342 F.3d 610 (6th Cir. 2003) (Eleventh Amendment immunity could not bar plaintiff's request for equitable relief against Board of Law Examiners); <u>Pueblo of Santa Ana</u> v. <u>The Hon. Nan G. Nash</u>, 854 F. Supp. 2d 1128 (D.N.M. 2012) (in an action for prospective declaratory and injunctive relief against a state court judge, judicial immunity, absolute immunity, and Eleventh Amendment immunity were all inapposite and did not preclude plaintiffs from obtaining <u>Ex Parte Young</u> relief).

      **(d)**    **<u>Younger</u> abstention is barred and unavailable in this action.**

As the First Circuit elucidated in <u>Guillemard-Ginorio</u> v. <u>Contreras-Gomez</u>, 585 F.3d 508, 522 (1st Cir. 2009), "[state court] [p]roceedings must be *coercive*, and in most-cases, *state-initiated*, in order to warrant abstention. [For example,] [a] state's enforcement of its laws or regulations in an administrative proceeding constitutes a coercive action." (Emphasis supplied) <u>ibid.</u> In the case at bar, the underlying administrative proceedings before the Board of Bar Examiners were not initiated by the state itself. To become a licensed attorney in Massachusetts, it is the bar applicant himself who must file a petition. By filing same, the applicant himself thereby initiates the administrative proceeding before the Board of Bar Examiners. <u>See</u> <u>Planned Parenthood League of Mass.</u> v. <u>Bellotti</u>, 868 F.2d 459 (1st Cir. 1989) (holding that, because there was no "***state-initiated*** proceeding, criminal or civil, to enjoin," <u>Younger</u> abstention could not be invoked). Furthermore, unlike the bar disciplinary proceeding cases cited by Defendants—*i.e.*, "coercive" disciplinary proceedings which are initiated by the bar—there is nothing "coercive" about applying to become a member of a state bar. Plaintiff is certainly not being "coerced" into applying to the Massachusetts bar, and is of course free to withdraw his petition at any time.

**II.    MONETARY DAMAGES ARE AUTHORIZED FOR ALL CONDUCT WHICH WAS *ULTRA VIRES*, "ADMINISTRATIVE," OR MADE IN THE ABSENCE OF JURISDICTION.**

**Officials claiming absolute immunity[16] [ . . . ] bear the burden of proving their actions warrant that protection**." <u>Knowlton</u> v. <u>Shaw</u>, 704 F.3d 1, 6 (1st Cir. 2013). Here, Defendants

---

[16] Quasi-judicial immunity is simply a form of absolute immunity that applies to non-judicial office when they perform *judicial* functions. <u>Henderson</u> v. <u>Heffler</u>, 2010 U.S. Dist. LEXIS 72155 (W.D.N.Y. July 19, 2010). In order to qualify, "[t]he proponent of a claim of absolute immunity bears the burden of establishing the justification of such immunity [ . . . .]" <u>Antoine</u> v. <u>Byers</u> & <u>Anderson, Inc.</u>, 508 U.S. 429, 432 (1993). To determine whether a defendant is entitled to quasi-judicial immunity, the court *must* take a "functional approach" and examine the conduct at issue. <u>Cleavinger</u> v.

cannot possibly meet their burden, and for good reason: none of the tortious conduct complained of in the operative complaint [ECF 16] is plausibly related to any of Defendants' "adjudicative" duties (*e.g.*, holding a formal "due process" hearing, after which the Board can make discretionary findings and determinations, *etc.*). In the case at bar, no "adjudicative duties" could possibly be implicated due to the fact that Defendants have yet to hold a formal due process hearing.[17] See, e.g., ECF 16 ¶¶ 28, 30.[18]

In its discussion of quasi-judicial immunity in Sinapi v. R.I. Bd. of Bar Exam'rs, 910 F.3d 544, 554 (1st Cir. 2018), the First Circuit promulgated the following three-prong inquiry: (1) whether the Board of Bar Examiners defendant was acting like a judge and performing a traditional "adjudicatory" function; (2) whether the defendant would be subject to numerous damages actions *but for* his or her absolute immunity; and (3) whether the Board member "adjudicate[d] disputes against a backdrop of multiple safeguards designed to protect a [party's] constitutional rights[.]" Ibid. Here, the first and third prongs cannot be satisfied under the facts and circumstances of this particular case, thereby barring the quasi-judicial immunity defense. As previously explained, *ante*, no formal due process hearing was ever held. What is more, Defendants never engaged in any subjective decision-making that could be considered a typical function of a judge

---

Saxner, 474 U.S. 193, 201-02 (1985); King v. Simpson, 189 F.3d 284, 287-88 (2d Cir. 1999); Saint-Guillen v. United States, 657 F. Supp. 2d 376, 381 (E.D.N.Y. 2009).

[17] The Supreme Court of the United States has "been quite sparing in [its] recognition of absolute immunity, and [has] refused to extend it any further than its justification would warrant[.]" (Quotations and citation omitted) Burns v. Reed, 500 U.S. 478, 487 (1991). "The presumption is that *qualified*[17] rather than *absolute* immunity is sufficient to protect government officials in the exercise of their duties." Id. at 486-487.

[18] This Court should take notice of the fact that **no evidence or affidavits** have been proffered by Defendants in support of their contention that immunity applies to the narrow facts of this case. See generally ECF 23-24. Just as judges have personal lives, and do not act as judges for every minute of each day (and for every type of action they may perform), the same principle applies to Defendants. Because Defendants have not proffered one iota of evidence in support of their quasi-judicial immunity defense (or even a simple affidavit), as a matter of law, they have come nowhere close to meeting their burden of proof. Accordingly, in the absence of any evidence of record, this Court is required to reject the immunity defense. See, e.g., Maestri v. Jutkofshi, 860 F.2d 50, 53 (2nd Cir.) (judge was properly denied absolute immunity for her issuance of an arrest warrant outside her jurisdiction); Loe v. Letsinger, 772 F.32d 808, 311-12 (7th Cir. 1985) (judicial immunity cannot apply to "ministerial" or "administrative" acts); Harper v. Merckle, 638 F.2d 848, 859 (5th Cir. 1981) (when a judge acts out of personal motivation and uses his office "to vindicate personal objectives," such actions do not amount to "judicial acts"); Brewer v. Blackwell, 692 F.2d 287, 397 (5th Cir. 1982) (same); Supreme Court of Va. v. Consumers Union, 446 U.S. 719, 731 (1980) (holding that **"judicial" functions only arise out of the adjudication of controversies**); Richardson v. Koshiba, 693 F.2d 911, 914 (9th Cir. 1982) ("These [executive] functions bear little resemblance to the characteristic of the judicial process that gave rise to the recognition of absolute immunity for judicial officers: the adjudication of controversies between adversaries.").

resolving disputes. This is because, even to-date, Defendants: have not made any formal, final determination; have not made any formal recommendations; have not made any findings of fact or law; and have not engaged in any other activity which is typical of judges that could potentially give rise to quasi-judicial immunity. Consequently, the unlawful conduct complained of plainly cannot be viewed as an "adjudicatory" function warranting quasi-judicial immunity.[19]

As for the third prong of the Sinapi test[20], courts look to whether the defendant Board member "adjudicate[d] disputes against a backdrop of multiple safeguards designed to protect a [party's] constitutional rights[.]" As previously discussed, at no time relevant hereto was there any "backdrop of multiple safeguards" to protect constitutional rights. Under the subject procedural rules, Plaintiff has no right to any timely judicial review in the state courts. What is more, even if the Board were to now hold a formal "due process" hearing, none of Plaintiff's serious constitutional concerns could possibly be addressed or remedied in that forum. Since the Board of Bar Examiners is not a court, it does not have the authority to change or strike down any of its own procedural rules. Stated differently, even if Defendants were to agree with the undersigned that the existing procedural rules are unconstitutional and fail "strict scrutiny" review, only the Massachusetts courts and the state legislature would have the authority to amend or repeal the offending procedural rules.

## REQUEST FOR ORAL ARGUMENT

Pursuant to L. R. 7.1(d), Plaintiff respectfully requests oral argument, as he believes that oral argument may assist this Honorable Court in its consideration of the merits hereof.

## CONCLUSION

**WHEREFORE,** on the above-mentioned premises, Plaintiff prays that this Honorable Court deny the motion to dismiss of Defendants Wellington and Board of Bar Examiners [ECF 23-24].

---

[19] In addition, courts have uniformly refused to extend any form of absolute immunity to acts which were taken in the absence of jurisdiction—regardless of the defendant's job title. Further, courts are required to distinguish between "administrative" duties and "adjudicative" duties, as absolute immunity is only available for "adjudicative" duties.

[20] This three-prong test was originally described in Bettencourt v. Bd. of Registration in Med. of Com. of Mass., 904 F.2d 772 (1st Cir. 1990).

At Cambridge, Massachusetts,                    Respectfully submitted,
This 26th Day of October, 2020

                                                /s/ Jonathan Mullane
                                                JONATHAN MULLANE
                                                30 Donnell Street
                                                Cambridge, MA 02138
                                                Tel.: (617) 800-6925
                                                j.mullane@icloud.com

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that this filing submitted via the CM/ECF system shall be transmitted electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF"), and that paper copies shall be mailed via first class mail, postage prepaid, to those indicated as non-registered participants on the date of filing.

DATED:      October 26, 2020                    /s/ Jonathan Mullane
                                                JONATHAN MULLANE