UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JONATHAN MULLANE, </br></br> Plaintiff, </br></br> v. </br></br> MASSACHUSETTS BOARD OF BAR EXAMINERS, MARILYN J. WELLINGTON, and DOES 1–10, </br></br> Defendants. | Case No. 20-cv-11382-DJC |

MEMORANDUM AND ORDER

Casper, J.                                                                                            September 10, 2021

## I.     Introduction

Plaintiff Jonathan Mullane ("Mullane") has sued the Massachusetts Board of Bar Examiners ("BBE"), Marilyn Wellington and ten unnamed defendants ("Does 1–10") (collectively, "Defendants") under 42 U.S.C. §§ 1983, 1985(3) and 1986 for damages related to alleged violations of Mullane's First, Fifth and Fourteenth Amendment rights (Counts I–III) as well as declaratory and injunctive relief for same (Counts IV–VI).  D. 16.  The Defendants now move to dismiss Mullane's complaint for lack of subject matter jurisdiction on abstention and immunity grounds.  D. 23.  For the reasons discussed below, Defendants' motion to dismiss is ALLOWED.

## II.    Standard of Review

Defendants' immunity and abstention arguments are a challenge to the Court's subject-matter jurisdiction.  See Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001).

Pursuant to Fed. R. Civ. P. 12(b)(1), a defendant may move to dismiss an action for lack of subject matter jurisdiction. "[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (quoting Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993)). To determine if the burden has been met, the Court "take[s] as true all well-pleaded facts in the plaintiffs' complaints, scrutinize[s] them in the light most hospitable to the plaintiffs' theory of liability, and draw[s] all reasonable inferences therefrom in the plaintiffs' favor." Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009).

### III.    Factual Background

Unless otherwise noted, the following facts are drawn from Mullane's amended complaint, D. 16, and documents referenced therein, and are taken as true for the purposes of resolving the motion to dismiss.

On May 9, 2019, Mullane petitioned for admission to the Massachusetts bar. D. 16 ¶ 8. Wellington, the Executive Director of the BBE, and the BBE reviewed Mullane's application. Id. ¶¶ 3, 9. On September 3, 2019, a staff attorney from the BBE contacted Mullane to inquire about his transfer between law schools. Id. ¶¶ 10–11. On April 23, 2020, Defendants informed Mullane that he had passed the February 2020 bar examination, but that his application remained pending as a result of character and fitness issues. Id. ¶ 12; D. 16-1 at 4. On the same day, Wellington further requested Mullane appear before the BBE for a virtual interview. D. 16 ¶ 13; D. 16-1 at 7. On April 26, 2020, Mullane replied and asked Wellington to explain the nature of the interview, whether he was entitled to representation, and the "issues, concerns, or charges" that were the basis for the interview. D. 16 ¶¶ 15–16. Mullane did not receive a written response from Wellington or the BBE; upon his later phone call, the BBE told him that the interview was informal, and that he

did not need an attorney present.  Id. ¶¶ 16–17.  Mullane attended the video interview on May 7, 2020, where the BBE asked him questions about his past and ongoing litigation, specifically why he brought a civil action against a sitting United States District Judge in the Southern District of Florida.  Id. ¶¶ 18–20.   On May 14, 2020, Wellington informed Mullane by letter that his application would remain pending until an investigation took place, conducted by the law firm of Holland & Knight, at which point the BBE would determine "the next steps" regarding Mullane's petition for admission, including the possibility of a formal hearing.  Id. ¶¶ 21–22; D. 16-1 at 13. In June and July 2020, Holland & Knight communicated with Mullane's father, an attorney, about his request that the Board of Bar Overseers issue an ethical opinion as to the firm's participation in the investigation because attorneys employed at Holland & Knight clerked for and appeared before certain of the judges that Mullane has sued in Massachusetts and Florida courts.  D. 16 ¶ 24; D. 16-1 at 15, 18.

**IV.     Procedural History**

Mullane, proceeding *pro se*, initiated this case on July 23, 2020, D. 1, and filed an amended complaint on August 21, 2020, bringing claims under 42 U.S.C. §§ 1983, 1985(3) and 1986 for damages related to alleged violations of his First, Fifth and Fourteenth Amendment rights (Counts I–III) as well as declaratory and injunctive relief for same (Counts IV–VI).  D. 16.  Defendants have now moved to dismiss Mullane's complaint for lack of subject matter jurisdiction.  D. 23. The Court heard the parties on the pending motion and took the matter under advisement.  D. 32.

**V.      Discussion**

**A.     *Younger* Abstention**

Defendants assert that the Court must abstain from interfering with the ongoing BBE proceedings and dismiss Mullane's complaint to the extent it seeks declaratory or injunctive relief.

D. 24 at 8–10 (citing Younger v. Harris, 401 U.S. 37 (1971); Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431–37 (1981)).  Mullane contends that Younger abstention does not apply here because the BBE proceedings are not coercive or state initiated.  D. 27 at 22.

The Court follows a three-step approach to determine whether Younger requires abstention from the ongoing state proceeding here.  See Sirva Relocation, LLC v. Richie, 794 F.3d 185, 192–93 (1st Cir. 2015) (citing Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 78–79 (2013); Middlesex Cty. Ethics Comm., 457 U.S. at 432).  First, the proceeding must be a criminal prosecution, civil enforcement proceeding or a civil proceeding "uniquely in the furtherance of the state courts' ability to perform their judicial functions."  Id. at 192.  Second, the proceeding must meet the three Middlesex factors:  1) it is judicial in nature, 2) it implicates important state interests, and 3) it provides an adequate opportunity for the plaintiff to raise federal constitutional challenges.  Id.  Third, the Court determines whether any exceptions to Younger apply, for example if the proceeding is brought in bad faith to harass, abstention is not warranted.  Id. at 193.

Here, the BBE proceeding falls into the third category to which Younger extends[1] because the Massachusetts Supreme Judicial Court ("SJC") "retains ultimate authority to decide a person's fitness to practice law in the Commonwealth," Matter of Prager, 422 Mass. 86, 91 (1996) (citing Mass. Gen. L. c. 221, § 37), and bar admissions proceedings conducted by the BBE are an extension of that authority.  See id.; Mass. Gen. L. c. 221 § 36 (establishing SJC authority over BBE); SJC Rule 3.01 §§ 5.1, 7.1 (delegating rulemaking authority to BBE); see also Grundstein v. Kasper, No. 5:17-cv-75, 2017 WL 11504217, at *3 (D. Vt. Dec. 20, 2017), aff'd sub nom.

---

[1] The admissions process is not within the first or second category as it is not a criminal prosecution or civil enforcement action akin to a criminal prosecution (i.e., not a disciplinary action brought by the BBE against an attorney).  Mullane's argument that abstention is improper because the proceeding must be coercive and state initiated, D. 27 at 22, speaks to the second category of proceedings that implicate Younger, and is therefore unpersuasive.  See Sprint Commc'ns, Inc., 571 U.S. at 78–79.

4

Grundstein v. Vermont Bd. of Bar Examiners, 748 F. App'x 425 (2d Cir. 2019) (concluding that Younger required abstention from bar admission proceeding where state board of bar examiners acted as arm of state court). Moreover, the SJC's oversight of the legal profession, where attorneys admitted to the state bar are officers of the court, is a uniquely important interest. See Middlesex Cty. Ethics Comm., 457 U.S. at 433–34 (recognizing state's "extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses"); Johnson v. Bd. of Bar Overseers of Mass., 324 F. Supp. 2d 276, 283 (D. Mass. 2004) (concluding same); Ellis v. Dep't of Indus. Accidents, 463 Mass. 541, 548–49 (2012) (explaining that admitting attorneys, who are officers of the court, is a "core function" of the SJC).

Next, the proceeding satisfies the three Middlesex factors. See Sirva Relocation, LLC, 794 F.3d at 196. First, the BBE proceeding is judicial in nature as the attorney admissions process contains the hallmarks of a court proceeding over which the SJC delegated its judicial authority to the BBE.[2] See Middlesex Cty. Ethics Comm., 457 U.S. at 433 (reasoning that delegation of statutory or constitutional duty to regulate bar admissions to state commission rendered those proceedings judicial in nature as commission was "arm of the court"); Johnson, 324 F. Supp. 2d

---

[2] An applicant to the Massachusetts bar begins by petitioning the SJC. Rule I, Rules of the Board of Bar Examiners, D. 24-1 at 2. The BBE conducts a character and fitness investigation on behalf of the SJC, which may include an informal interview if any information from the BBE investigation casts doubt on the applicant's character and fitness. Id. at 2–3, Rule V.1. The BBE then determines whether to recommend the applicant for admission to the SJC. Id. If the BBE does not recommend an applicant for admission, it must provide the applicant with the opportunity for a formal hearing and notice for same. Id. at 4–5, Rule V.1.3, 2.1. Prior to a hearing, the BBE may conduct a detailed investigation into an applicant's character and fitness and provide a copy of any investigative report to the applicant and their counsel. Id. at 5, Rule V.2.3. At the hearing, the burden of proof (clear and convincing evidence) is placed upon the applicant, and both the applicant and the BBE can present documentary and testimonial evidence. Id. at 5–6, Rule V.2.2, 2.4, 2.5. All witnesses must testify under oath. Id. at 6, Rule V.2.6. At the conclusion of the hearing, the BBE issues a report and recommendation to the SJC that contains its findings of fact. Id., Rule V.2.7. An applicant may request review of an adverse determination from the Chief Justice of the SJC within sixty days. Id., Rule V.2.8.

at 283–84 (concluding that hearing procedures of bar disciplinary board were judicial in nature); Mass. Gen. L. c. 221 §§ 35–37 (establishing BBE and SJC authority over it); SJC Rule 3.01 §§ 5.1, 7.1 (delegating rulemaking authority to BBE). Second, as explained above, Massachusetts has an "extremely important interest in maintaining and assuring the professional conduct of the attorneys it licenses." See Middlesex Cty. Ethics Comm., 457 U.S. at 434; Sirva Relocation, LLC, 794 F.3d at 196 (concluding that proceeding implicated important state interests based on prior court decisions recognizing same). Third, Mullane has an adequate opportunity to raise federal constitutional challenges, especially given that BBE rules provide for SJC review of its recommendation. Johnson, 324 F. Supp. 2d at 283–84 (concluding that third Middlesex factor was met where plaintiff has "opportunity to raise [] constitutional claims in the courts of the Commonwealth," which expressly provide venue for such challenges); see In re Admission to Bar of Com., 444 Mass. 393, 399 n.14 (2005) (considering due process argument of applicant denied admission to Massachusetts bar); see also Bettencourt v. Bd. of Registration In Med. of Com. of Mass., 904 F.2d 772, 778 (1st Cir. 1990) (explaining that Massachusetts law provides for SJC review "for constitutional error" of decisions by a state licensing board). Finally, none of the narrow exceptions to Younger apply here. See Sirva Relocation, LLC, 794 F.3d at 192 (noting exceptions to Younger when "state proceeding is brought . . . for the purpose of harassment . . . if the state forum provides inadequate protection of federal rights [or] when a state statute is 'flagrantly and patently violative of express constitutional prohibitions'") (quoting Younger, 401 U.S. at 53–54). Mullane initiated the BBE proceeding when he petitioned the SJC for admission, D. 16 ¶ 8, the BBE admissions process allows him to raise federal constitutional challenges on appeal to the SJC, and there is no allegation of a "flagrantly or patently" unconstitutional state statute. See Johnson, 324 F. Supp. 2d at 283–84.

Accordingly, the Court must abstain from interference into the ongoing BBE proceeding. As to Mullane's request for declaratory and injunctive relief, Counts IV through VI, "dismissal on Younger grounds is without prejudice." Maymo-Melendez v. Alvarez-Ramirez, 364 F.3d 27, 32 n.4 (1st Cir. 2004). For the reasons stated above, the Court also must abstain from adjudicating Mullane's damages claims in Counts I–III, see Rossi v. Gemma, 489 F.3d 26, 37 (1st Cir. 2007) (concluding that for purposes of abstention, "there is little practical difference" between a § 1983 damages award and if plaintiffs "had obtained a declaratory judgment based on the same constitutional claim") even if dismissal on these damages claims was not otherwise warranted as a matter of quasi-judicial immunity as discussed below.

**B.      Immunity**

　　1.　　*Sovereign Immunity*

Defendants, alternatively, urge dismissal of Counts IV–VI to the extent Mullane seeks declaratory relief against the BBE and Wellington in her official capacity.[3]  D. 24 at 7–8.

In general, "states are immune from claims brought by private persons in federal courts." Bergemann v. Rhode Island Dep't of Envtl. Mgmt., 665 F.3d 336, 339 (1st Cir. 2011) (citing Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); U.S. Const. amend. XI).  Immunity extends to any entity that is an arm of the state, like the BBE.  Sinapi v. Rhode Island Bd. of Bar Examiners, 910 F.3d 544, 553 (1st Cir. 2018) (concluding that Rhode Island Board of Bar

---

[3] Count IV seeks injunctive relief pursuant to Ex parte Young against Wellington and Does 1–10 in their official capacities.  D. 16 at 12.  Counts V and VI seek declaratory judgments against all Defendants in their individual and official capacities.  Id. at 13–14.  Counts I–III seek damages from Wellington and Does 1–10 solely in their individual capacities.  As to Counts I–III seeking damages, there is no "Eleventh Amendment bar" to damages suits against state officials in their individual capacities "even though the conduct was part of the officer's official duties." In such a suit, the state official "could claim absolute or qualified immunity as a defense," as Wellington does here.  Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza, 484 F.3d 1, 26 (1st Cir. 2007) (quotations omitted).

Examiners "including its members in their official capacities, stands in the shoes of [the state] itself, as an arm of the state"). And "official capacity suits," like this one naming the BBE and Wellington in her official capacity (at least on certain counts), are "'only another way of pleading an action against an entity of which an officer is an agent' and is therefore 'to be treated as a suit against the entity.'" Madison v. Cruz, 393 F. Supp. 3d 135, 138 (D. Mass. 2019) (quoting Kentucky v. Graham, 473 U.S. 159, 165–66 (1985)).

Defendants argue that sovereign immunity precludes declaratory relief in Counts V and VI because "the declaratory judgment act does not abrogate state sovereign immunity." D. 24 at 7. "Unless an exception applies, the Eleventh Amendment grants States immunity from suits for declaratory judgments." Philadelphia Indem. Ins. Co. v. Goff, No. 10-cv-10224-GAO, 2010 WL 2204828, at *1 (D. Mass. May 27, 2010) (citing Porier v. Mass. Dep't of Corr., 558 F.3d 92, 97 (1st Cir. 2009); Maysonet–Robles v. Cabrero, 323 F.3d 43, 49 (1st Cir. 2003)). The Declaratory Judgment Act "plainly does not operate as an express waiver of sovereign immunity," Muirhead v. Mecham, 427 F.3d 14, 18 n.1 (1st Cir. 2005); see Green v. Mansour, 474 U.S. 64, 73 (1985) (noting that "a declaratory judgment is not available when the result would be a partial 'end run' around" sovereign immunity), nor is there any indication here that Massachusetts intended to waive its immunity or consented to suit. See New Hampshire v. Ramsey, 366 F.3d 1, 15 (1st Cir. 2004). Thus, sovereign immunity precludes Mullane's claims for declaratory judgment against the BBE and Wellington in her official capacity (Counts V–VI).

As to Count IV, Mullane relies upon Ex parte Young for the proposition that "suits seeking declaratory and injunctive relief against state officers in their individual capacities" are not so barred. D. 27 at 21–22. Indeed, sovereign immunity does not bar a suit for prospective injunctive relief against a state official, such as Wellington in her official capacity. See Seminole Tribe of

8

Fla., 517 U.S. at 73 (noting that federal jurisdiction exists "over a suit against a state official when that suit seeks only prospective injunctive relief in order to 'end a continuing violation of federal law'"). Whether "suit lies under Ex parte Young does not include an analysis of the merits of the claim." Town of Barnstable v. O'Connor, 786 F.3d 130, 139 (1st Cir. 2015) (quoting Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 646 (2002)).

Here, Mullane alleges two ongoing constitutional violations; first, that BBE rules violate his due process rights insofar as they do not permit interlocutory review of the BBE's decision to investigate his background before rendering an appealable decision, and second, that the BBE's decision to investigate his background (including his lawsuits) infringes upon his First Amendment right to file a lawsuit. See D. 16 ¶¶ 26–28. Moreover, the relief Mullane seeks in Count IV, a declaration and injunction barring Defendants from continuing the alleged constitutional violations, can be characterized as prospective. See D. 16 ¶ 70; Town of Barnstable, 786 F.3d at 140–41 (reasoning that even though allegedly unconstitutional decision occurred in the past, relief requested was prospective and thus within Ex parte Young doctrine); Dubuc v. Mich. Bd. of L. Examiners, 342 F.3d 610, 616 (6th Cir. 2003) (concluding that plaintiff sought relief "properly characterized as prospective" when he alleged that "Bar admission rules, facially and as currently applied, violate the United States Constitution").

Accordingly, also on sovereign immunity grounds, the Court allows the motion to dismiss as to Counts V and VI against the BBE and Wellington in her official capacity. In light of the Court's ruling, explained below, that the doctrine of quasi-judicial immunity bars the claims against Wellington for damages in her individual capacity, Mullane is not entitled to a declaratory judgment that Wellington's actions in her individual capacity were nonetheless unconstitutional.

9

Cf. Rossi, 489 F.3d at 37. Although the Court invokes Younger abstention to dismiss Count IV, for the reasons stated above, it does not do so on the alternative grounds of sovereign immunity.

        2.     *Quasi-judicial Immunity*

Defendants assert that Wellington cannot be held liable for damages in her individual capacity because she enjoys quasi-judicial immunity. D. 24 at 10. Quasi-judicial immunity extends "to agency officials who, irrespective of their title, perform functions essentially similar to those of judges or prosecutors, in a setting similar to that of a court." Sinapi, 910 F.3d at 554 (quoting Bettencourt, 904 F.2d at 783 (concluding that state officials sued in their individual capacities were entitled to quasi-judicial immunity)) (emphasis in original). The First Circuit employs a functional approach to determine whether such immunity attaches. Bettencourt, 904 F.2d at 782. "First, does a Board member, like a judge, perform a traditional 'adjudicatory' function, in that [she] decides facts, applies law, and otherwise resolves disputes on the merits . . . ?" Id. at 783. "Second, does a Board member, like a judge, decide cases sufficiently controversial that, in the absence of absolute immunity, [she] would be subject to numerous damages actions?" Id. "Third, does a Board member, like a judge, adjudicate disputes against a backdrop of multiple safeguards designed to protect a [plaintiff's] constitutional rights?" Id.

The First Circuit has concluded that, on these factors, Rhode Island's Board of Bar Examiners was entitled to quasi-judicial immunity and the reasoning in that case warrants the same result here. Sinapi, 910 F.3d at 555. First, the role of Wellington and other BBE members is "functionally comparable to that of a judge . . . [as BBE] members weigh[] the facts" regarding a petition for admission and an applicant's character and fitness, and through its adjudication process determine whether an applicant is entitled to admission "on the merits." Id.; p. 5, note 2, supra (describing the BBE admissions adjudication process including formal hearings and report of

factual findings). Moreover, BBE members serve a set five-year term. See Bettencourt, 904 F.2d at 783; Mass. Gen. L. c. 221, § 35 (setting term for BBE members). "Second, the act of denying a bar applicant [admission] is likely to stimulate a litigious reaction by the disappointed applicant, as was the case here." Sinapi, 910 F.3d at 555. Such litigation illustrates the "need for quasi-judicial protection of the Board member [since] [f]ew people would serve on the Board knowing that any negative . . . decision would likely trigger a lawsuit aimed at their personal checking accounts," and for those who do serve, to ensure that the "Board is to function objectively." Id. Third, the admissions process includes protections designed to protect Mullane's constitutional rights, "up to and including review by the full Supreme Judicial Court." Johnson, 324 F. Supp. 2d at 287; D. 24-1 at 5, 10 (outlining formal hearing procedures and appeal procedures for petitioners "dissatisfied with [BBE] determination concerning their petition," including review by SJC).

Mullane contends that Wellington is not entitled to such immunity because she has not acted in a judicial capacity, for neither she nor the BBE has made a final determination as to his case. D. 27 at 23. That argument, however, misreads the Bettencourt test, which looks to the individual's job function, not a particular decision at a particular point in time. See Bettencourt, 904 F.2d at 782–83. Moreover, Mullane "makes no allegations of conduct of [Wellington] outside [her] role[] as adjudicator[] of [his] case." Johnson, 324 F. Supp. 2d at 287. Mullane further contends that prong three of the Bettencourt test is not satisfied because he has no right to timely judicial review in state court. D. 27 at 24. Both the BBE Rules and the facts alleged here show otherwise. After the BBE concludes its investigation, it is required to either recommend Mullane for admission or hold a formal hearing. The decision that follows such a hearing may be appealed to the BBE and eventually to the SJC, which may hear constitutional challenges. D. 24-1 at 5, 10.

Accordingly, the Court concludes that Wellington has quasi-judicial immunity in her individual capacity and cannot be sued for damages.[4]

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion to dismiss. D. 23. Counts I–III, which seek damages, are barred by quasi-judicial immunity and dismissed with prejudice. Count IV is dismissed without prejudice on abstention grounds. Counts V and VI are dismissed with prejudice given their dismissal on abstention and sovereign immunity grounds.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[4] To the extent Mullane's complaint has brought claims against unnamed members of the BBE or its staff for damages, see D. 16 ¶ 4 (naming "Does 1 through 10"), such immunity applies to them as well. See Bettencourt, 904 F.2d at 785 (concluding that "staff members are entitled to quasi-judicial immunity for their actions" in helping Board decide adversely to plaintiff, since decision related to the "heart of the adjudicatory process"). Mullane also suggested at the motion hearing, for the first time, that Does 1–10 were not state defendants, but rather federal employees. The Court notes that to sue an unidentified party, a plaintiff must "show that 'a good-faith investigation has failed to reveal the identity of the relevant defendant and there is a reasonable likelihood that discovery will provide that information.'" Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 58 n.6 (1st Cir. 2013) (quoting Martínez–Rivera v. Sánchez Ramos, 498 F.3d 3, 8 (1st Cir. 2007)). Even as alleged, Mullane's amended complaint offers no information as to these defendants or his investigation into them. See Messere v. Clarke, No. 11-cv-11705-MLW, 2015 WL 5609959, at *14 (D. Mass. Sept. 22, 2015).